555 A.2d 873

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF TRAFFIC SAFETY, Appellee,**

v.

**Patrick M. O'CONNELL, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1988.

Decided March 6, 1989.

244

George B. Ditter, Ambler, for appellant.

Michael R. Deckman, Deputy Chief Counsel, Spencer A. Manthrope, Chief Counsel, Jay C. Waldman, Gen. Counsel, Harold H. Cramer and Christopher J. Clements, Asst. Counsel, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Patrick M. O'Connell, Appellant, from the Opinion and Order of the Commonwealth Court reversing an order of the Court of Common Pleas of Montgomery County which, in turn, reversed a one year suspension of Appellant's driving privileges imposed by the Pennsylvania Department of Transportation, Bureau of Traffic Safety (Department). The Department imposed the one year suspension on Appellant's motor vehicle operator's license for his refusal to take a breathalyzer test as required in Section 1547(b) of the Motor Vehicle Code, 75 Pa.C.S. § 1547(b).[1]

---

1. 75 Pa.C.S. § 1547(b) provides as follows:
   B. Suspension for refusal
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to

It is undisputed that Appellant was operating an automobile which struck two parked cars in Abington Township, Montgomery County, on the evening of June 19, 1983. The Abington Township police officer who investigated the accident noticed a strong odor of alcohol on Appellant's breath and conducted a field sobriety test. When Appellant could not pass the test, the officer arrested Appellant for driving under the influence of alcohol. Appellant was immediately advised of his *Miranda* rights and taken to the Township Police Station where he was again given his *Miranda* rights in written form. The document was read to Appellant and he was asked to respond to each question in writing. Paragraph 6 of the form asked, "Do you want to talk to a lawyer at this time or have a lawyer with you while we ask you questions?" Appellant initially answered this question "No", but subsequently changed his answer to "Yes".

When Appellant had completed the form (with his changed answer to question 6), he was asked to take a breathalyzer test. At this point, the facts are somewhat disputed. Appellant testified before the trial court that he refused to take the test and that he told the officer that he was refusing because he had not been permitted to contact his attorney. The officer testified that Appellant refused three times and that he gave no reason for his refusal. The officer also testified that after the third refusal Appellant was permitted to call his lawyer and that following this conversation, Appellant was willing to submit to the breathalyzer test, but that the officer refused to administer the test because he had been unable to observe Appellant personally for the past 35–45 minutes.

do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

Appellant's refusal was reported to the Department and it imposed the mandatory one year suspension of Appellant's license pursuant to 75 Pa.C.S. § 1547(b). A timely appeal to the Court of Common Pleas followed. A hearing was held before the Honorable Albert R. Subers on January 9, 1984, where Appellant and the arresting officer testified as to what occurred on the night of June 19, 1983.

The trial court accepted Appellant's testimony as credible and concluded that his refusal was based on his mistaken belief that he had a right to speak with his attorney in regards to taking the breathalyzer test and that since no such right is recognized at law, Appellant's refusal could be excused as unknowing. The Department appealed the trial court's order vacating the one year license suspension to the Commonwealth Court and argued before that court that insufficient evidence existed to support the trial court's factual findings and that the police are not required to inform an arrestee that his right to speak to an attorney (assured by *Miranda*) does not extend to requests to submit to breathalyzer tests.

The Commonwealth Court reviewed the trial court's findings and found them to be unsupported by the record and therefore reversed the order of the trial court. The Commonwealth Court also reviewed its case law in breathalyzer testing situations and clarified its prior holdings, ruling that police officers have a duty to inform an arrestee that he has no right to speak with an attorney in regards to taking the breathalyzer test, only where the arrestee asks to consult with someone before making the decision to take the test. *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 99 Pa.Commonwealth Ct. 410, 513 A.2d 1083 (1986).

We granted Appellant's petition for allowance of appeal to determine whether the proper scope of review was applied to this matter and to give guidance in the troublesome situation presented in cases such as this one, where a person is arrested for a crime, read *Miranda* rights, and is then told to submit to a breathalyzer test, but is not told

that his right to see an attorney does not extend to taking this test.

■ When appellate courts review the decision of a court of common pleas in a license suspension case, the scope of review is limited to determining whether the findings of facts of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Commonwealth of Pennsylvania, Department of Transportation v. Korchak,* 506 Pa. 52, 483 A.2d 1360 (1984); *Bureau of Highway Safety v. Wright,* 355 Pa. 307, 49 A.2d 783 (1946).

■ Questions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts. *Korchak;* see also, *Waigand v. Commonwealth,* 68 Pa.Commonwealth Ct. 541, 449 A.2d 862 (1982); *McMahon v. Commonwealth,* 39 Pa.Commonwealth Ct. 260, 395 A.2d 318 (1978).

■ As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility. This rule of law is well established in our jurisprudence and is rooted in concepts of fairness, common sense and judicial economy. *Norfolk & W. Ry. Co. v. Pa. Public Utility,* 489 Pa. 109, 413 A.2d 1037 (1980); *PHRC v. Chester Housing Authority,* 458 Pa. 67, 327 A.2d 335 (1974); *Burbage v. Boiler Eng'g. & Supply Co.,* 433 Pa. 319, 249 A.2d 563 (1969); *D.F. Bast, Inc. v. Pa., PUC,* 397 Pa. 246, 154 A.2d 505 (1959); see also, *McGovern's Estate v. State Employment Retirement Bd.,* 512 Pa. 377, 517 A.2d 523 (1986).

■ Additionally, in license suspension cases under Section 1547(b) of the Vehicle Code, the Commonwealth must establish that the driver involved: (1) was arrested for driving while under the influence of alcohol; (2) was asked

to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of his driver's license. See, *Everhart v. Commonwealth,* 54 Pa.Commonwealth Ct. 22, 420 A.2d 13 (1980).

Once the Commonwealth meets its burden, it is the driver's responsibility to prove that he was not capable of making a knowing and conscious refusal to take the test. This is a factual determination which is to be made by the trial court.

■ In this case, it is admitted that the Commonwealth satisfied its burden in proving that Appellant was arrested for drunken driving, was asked to submit to a breathalyzer test, that he refused, and that he was warned that his license would be suspended if he refused. The question in the case then, is whether the refusal was a knowing one. Appellant asserted at the hearing before the trial court that he refused to take the test because he was misled into believing that he was entitled to confer with an attorney prior to deciding to take the test. On direct examination, Appellant explained that he told the arresting officer he was refusing to take the test for the following reason:

... I would not take the test until I was able to speak to a lawyer. That was the grounds on that answer.

■ The arresting officer denied that Appellant explained himself in this manner and recalled that Appellant gave no reason but simply stated, "You are signing my death warrant." On cross-examination, Appellant denied making this statement and could not recall what he said with regard to the statement to which the Commonwealth attorney was referring. Thus, the trial court was confronted with two witnesses who remembered the events of June 19, 1983 quite differently and who was in the position to decide for himself which of the two witnesses was more credible. The trial court chose to believe Appellant and his findings in this regard are conclusive. It was not for the Commonwealth Court to read into the record, weigh the evidence, and to decide for itself that Appellant did or did not state his

reasons to the officer or that Appellant could or could not recall what he said to the officer. That, as we have said, was for the trial court to do. We read this record to contain evidence which can support Appellant's position, that he was misled into thinking that he had a right to speak to his attorney before taking the breathalyzer test, and therefore affirm the trial court's findings in Appellant's favor. To the extent that the Commonwealth Court chose to accept and reject portions of Appellant's testimony and, in effect, to make its own findings of fact, it exceeded its scope of review and its decision must be reversed.

■ Appellant also argues, however, that this whole controversy arose because the request to take the breathalyzer test came hot on the heels of the *Miranda* questioning. Appellant specifically chose to exercise his right to speak to his attorney before proceeding any further in any questioning dealing with the drunk driving charges. Since the Appellant chose to exercise his rights, the arresting officer promptly and properly stopped any questioning, but did not let Appellant make his phone call. Instead, the officer began his requests that Appellant submit to the breathalyzer test.

Appellant argues that when he chose to exercise his right to speak with an attorney and his request was met with a request to take a test, he was confused. The Department argues that a driver's responsibility to take a breathalyzer test arises in a civil, not criminal, context and no right to speak to counsel is implicated. Accordingly, the Department argues that since Appellant was properly placed under arrest and asked to submit to the test and told the consequences if he refused to submit to the test, he was told all that the law required. The Department concludes that anything short of an unqualified assent to take the test under these circumstances is viewed as a refusal and cites various Commonwealth Court decisions in this area of the law supportive of the argument that confusion arising as to whether a driver may speak to an attorney is not a sufficient reason to refuse to submit to the breathalyzer test.

It is true that as a condition of maintaining a driver's license in this Commonwealth, all drivers are subject to the implied consent requirements of the Motor Vehicle Code and must submit to blood and breath tests under appropriate circumstances. *Department of Transportation, Bureau of Traffic Safety v. McFarren*, 514 Pa. 411, 525 A.2d 1185 (1987); 75 Pa.C.S. § 1547(a). It is also true that these requests to submit to blood and breath tests are civil proceedings and that the right to consult with an attorney before taking the test is not recognized in Pennsylvania. See, *King v. Department of Transportation, Bureau of Traffic Safety*, 81 Pa.Commonwealth Ct. 177, 472 A.2d 1196 (1984).

The problem in this case, and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceed with the *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change "hats" and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, a refusal is recorded.[2]

**2.** This area of the law has generated considerable litigation in the Commonwealth Court over the years and indicates that many individuals are being deprived of their license because of their confusion over when they can or cannot ask for an attorney. This list, of course, only represents cases where individuals sought appellate review. It is unknown how many cases end with the trial court's affirmance of the suspension under the same circumstance because the litigant cannot afford to appeal, but the number of these cases must be large.

*Department of Transportation, Bureau of Traffic Safety v. Bender*, 107 Pa.Commonwealth Ct. 475, 529 A.2d 44 (1987); *Appeal of Kilcullen*, 103 Pa.Commonwealth Ct. 521, 520 A.2d 947 (1987); *Department of Transportation, Bureau of Traffic Safety v. Turner*, 100 Pa.Commonwealth Ct. 539, 515 A.2d 96 (1986); *Department of Transportation, Bureau of Traffic Safety v. Bartelt*, 94 Pa.Commonwealth Ct. 198, 503 A.2d 103 (1986); *Department of Transportation, Bureau of Traffic Safety v. Doherty*, 88 Pa.Commonwealth Ct. 482, 490 A.2d 481 (1985); *King v. Department of Transportation, Bureau of Traffic Safety*, 81 Pa.Commonwealth Ct. 177, 472 A.2d 1196 (1984); *Department of*

This state of affairs is unacceptable because it is fraught with pitfalls for the arrestee who is not trained to recognize the difference between a civil or criminal investigation and becomes a source of accusation of manipulation by the police over confused individuals who are suspected of having dulled senses.

The law has always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice. See, *Everhart v. Commonwealth*, 54 Pa.Commonwealth Ct. 22, 420 A.2d 13 (1980); *Ford v. Department of Transportation, Bureau of Traffic Safety*, 45 Pa.Commonwealth Ct. 268, 406 A.2d 240 (1979).

Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

An arrestee is entitled to this information so that his choice to take a breathalyzer test can be knowing and conscious and we believe that requiring the police to qualify

*Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa.Commonwealth Ct. 108, 468 A.2d 891 (1983); *Department of Transportation, Bureau of Traffic Safety v. Miele*, 75 Pa.Commonwealth Ct. 130, 461 A.2d 359 (1983); *Department of Transportation, Bureau of Traffic Safety v. Wroblewski*, 65 Pa.Commonwealth Ct. 333, 442 A.2d 407 (1982); *Wilson v. Commonwealth*, 53 Pa.Commonwealth Ct. 342, 417 A.2d 867 (1980); *Department of Transportation, Bureau of Traffic Safety v. Herman*, 49 Pa.Commonwealth Ct. 201, 410 A.2d 1296 (1980); *Sentle v. Commonwealth*, 48 Pa.Commonwealth Ct. 479, 410 A.2d 903 (1980); *Weitzel Appeal*, 41 Pa.Commonwealth Ct. 235, 400 A.2d 646 (1979); *Ford v. Department of Transportation, Bureau of Traffic Safety*, 45 Pa.Commonwealth Ct. 268, 406 A.2d 240 (1979); *Department of Transportation, Bureau of Traffic Safety v. O'Rourke*, 25 Pa.Commonwealth Ct. 580, 361 A.2d 496 (1976); *Department of Transportation, Bureau of Traffic Safety v. Cannon*, 4 Pa.Commonwealth Ct. 119, 286 A.2d 24 (1972).

the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test.

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being misled into making uninformed and unknowing decisions to take the test.

The order of the Commonwealth Court is reversed.

STOUT, J., concurs in the result.