601 A.2d 423

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

**v.**

**Frank John PSZONTAK, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 19, 1991.

Decided Dec. 17, 1991.

Timothy P. Wile, Asst. Counsel–In–Charge of Appellate Section, for appellant.

Michael F.X. Gillin, for appellee.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

Before us for consideration is the appeal of the Department of Transportation from an order of the Court of Common Pleas of Delaware County. The court sustained Frank John Pszontak's appeal effectively vacating a suspension order of the Pennsylvania Department of Transportation (Department) pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, due to his failure to submit to chemical testing of his blood after he had been arrested for driving under the influence of alcohol. We affirm.

The dispositive facts, taken from the testimony of the arresting officer, are as follows: After Pszontak was arrested, he was not given *Miranda* warnings,[1] but he was advised generally that he had no right to an attorney. The pertinent testimony of Officer Boyden was as follows:

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## DIRECT EXAMINATION

MR. WORLINSKY:

Q. Did you ask the Petitioner to submit a chemical test?

A. Yes, I did.

Q. What type of test was he asked to submit to.

A. The Defendant was requested [on] three occasions to submit to a blood test—a blood extraction test for BAC to be administered at Fitzgerald Mercy Hospital.

Q. What did you tell the Petitioner would happen to him if he refused to take the test?

A. At the two—the first times on location on the 1000 block of Church Lane, I advised the Petitioner of the Implied Consent Law, that I—that he had the duty to submit to one or more of three tests for blood alcohol. And that a refusal to submit to the test will result in his losing his license for a year, and that it may be used against him. He was then transported to the hospital and he was again, because of his condition, advised of same. And at that time he was also told in addition that at this stage he was not—that he was not to be afforded the opportunity to consult with an attorney. At that time, before he exited the vehicle and at the hospital, he refused and said he wanted his attorney and wasn't going to give me anything, at which time he was then transported back to my headquarters.

Q. Were the Miranda rights ever read to the Petitioner?

A. No, they were not.

Q. Was anything said by you about an attorney before the Petitioner asked to speak with an attorney?

A. No, I didn't.

Q. What, if anything, did you say to the Petitioner after he asked to speak to an attorney?

A. I transported him. I said fine. As far as I was concerned, that was a refusal. He was transferred back to headquarters and processed.

Q. Did the Petitioner request for an attorney before or after he told you he wasn't going to take the test?

A. It came after he told me he wasn't going to take the test.

\* \* \* \* \* \*

MR. WORLINSKY:

Okay. I have no further questions at this time.

\* \* \* \* \* \*

CROSS EXAMINATION

BY MR. DELUCA:

Q. Officer Boyden, isn't it true that Mr. Pszontak initially agreed to take the test?

A. That's correct.

. . . .

Q. ... After Mr. Pszontak requested to speak to his attorney, what happened next?

A. He was transported back to Yeadon Police Station.

Q. Now you—you stated on direct examination that he asked to speak to his attorney after he refused the test. Was that simultaneous with refusing the test?

A. It was all in the same—yeah, it was all within the same....

Q. All in the same sentence.

A. Right.

These facts and testimony are important to the issue, which is whether Pszontak made a knowing and conscious refusal to take the chemical test, or whether, because of the type of confusion recognized by the Supreme Court in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), his refusal was not knowing and conscious.

Judge Harry J. Bradley of the common pleas court correctly analyzed this problem in his opinion when he said:

In this matter, it would seem that the arresting officer may well have created the confusion in the motorist's mind. The testimony of the officer would indicate that he

told the motorist that he did not have the right to consult with an attorney. The arresting officer did not go that one step further and advise the motorist clearly that the implied consent law does not permit the motorist the opportunity to consult with an attorney. Thereafter, the arresting officer considered the then request for an attorney as a refusal and provided no other information to the motorist.

This Court made clear in *Department of Transportation, Bureau of Driver Licensing v. Fiester*, 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990), *petition for allowance of appeal denied*, 528 Pa. 632, 598 A.2d 285 (1991), and *Department of Transportation, Bureau of Driver Licensing v. McGarvey*, 136 Pa.Commonwealth Ct. 358, 583 A.2d 39 (1990), that under the Supreme Court's decision in *O'Connell*, even if *Miranda* warnings are not given, if a licensee requests to speak to an attorney an explanation must be given by the police "that such constitutional rights do not extend to and are totally inapplicable under the implied consent law set out in the Vehicle Code." *McGarvey*, 136 Pa.Commonwealth Ct. at 363, 583 A.2d at 41. We agree with Judge Bradley that the officers involved here did not meet that requirement and accordingly affirm the order of the court of common pleas.

ORDER

NOW, December 17, 1991, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.

BYER, J., dissents.