629 A.2d 278

**Daniel McNULTY, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 1993.

Decided July 22, 1993.

Donald E. Lewis, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellee.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Daniel McNulty appeals an order of the Court of Common Pleas of Crawford County which dismissed his appeal and affirmed a one year suspension of his operating privileges imposed by the Department of Transportation (DOT) pursuant

to 75 Pa.C.S. § 1547(b)(1) (refusal to submit to chemical testing). We affirm.

Officer Richard Schneeman of the Coraopolis Police Department observed an automobile, driven by McNulty, proceeding in the wrong direction on a one way street. After the officer stopped the vehicle, he noticed that McNulty's speech was slurred, his eyes were glassy and he smelled of alcohol. Officer Schneeman asked McNulty to submit to field sobriety tests; McNulty could not perform those tests satisfactorily. Officer Schneeman placed McNulty under arrest for driving under the influence of alcohol in violation of 75 Pa.C.S. § 3731. At the scene, McNulty agreed to submit to chemical testing as requested by the officer.

The officer transported McNulty to Sewickley Valley Hospital to have a blood test. Schneeman testified that he gave McNulty the following warning:

Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance, pursuant to § 3731 of the Vehicle Code. I am asking you to submit to a chemical test of your blood. It is my duty as a police officer to inform you that your operating privileges will be suspended for one year for refusal to submit to this chemical test. I must also inform you that your constitutional rights as a Defendant in a criminal case do not apply to the taking of a chemical test, and that therefore you do not have a right to consult with an attorney or anyone else prior to taking the test, or have an attorney or anyone else present while taking the chemical test, nor do you have the right to remain silent when asked to take the chemical test.

(N.T., pp. 12–13, 6/3/92.)

The officer then read to McNulty a consent form of the hospital which contained two parts. The first portion, which was to be signed by the officer, read as follows:

I request Sewickley Valley Hospital to withdraw a specimen of blood from Daniel McNulty for the purposes of chemical analysis and/or to perform a chemical analysis to determine the presence of the amount of alcohol or other

controlled substance in the blood. The named individual has been arrested pursuant to § 3731 of the Vehicle Code, and I have made a determination of probable cause that such individual was operating or in actual physical control of the movement of a motor vehicle while under the influence of alcohol or a controlled substance.

(N.T., pp. 13–14.) Officer Schneeman read this to McNulty. Officer Schneeman then gave the second portion of the form, which called for McNulty's signature, to McNulty to read. The portion of the form read:

I consent to having chemical testing on my blood and/or urine in order to determine the .presence and amount of alcohol or other controlled substance. I further consent to the withdrawal of specimens of my blood or urine for such purposes. I understand the specimens and/or test results will be released to the police upon request, and may be used as evidence in proceedings against me.[1]

(N.T., p. 14.) McNulty then asked to read section 3731 of the Vehicle Code. Schneeman told McNulty that he had no right to read section 3731 and that if he persisted, his conduct would be considered a refusal. According to Schneeman, McNulty stated that if he could not read section 3731, he would not submit to the blood test. Officer Schneeman recorded a refusal.

McNulty offered a somewhat different description of the events. His account of events was no different from Schneeman's up to the point where he was given the hospital consent form to read. His description of the events that followed are contained in the following portion of his direct examination.

A When I finished reading what was on the card, he says. 'Do you understand? Sign below.' There was no pause for me to say yes or no. He says, 'Do you understand? Sign below'—

Q Okay.

---

1. We note that McNulty does not challenge the form, particularly the last sentence, as being constitutionally infirm because that sentence could reasonably be construed as a waiver of any future challenges to admission of the results of the chemical test.

A —like in one sentence.

Q Okay. I understand. and you didn't—you refused to sign?

A I says, no, sir, Officer. I don't understand. What is this § 3731 and there was also something of a code, something about a code up there. I wanted to know what the two of them meant, and once I read that, I would have signed it, but I was not given an opportunity to read it or even know what it meant.

Q Okay. Did you ever tell him that you would—as he testified, that you were not going to take the test?

A No, I never said that I was not going to take the test.

(N.T. 31–32.)

Accepting Officer Schneeman's version of events, in its opinion, the trial court stated:

> We believe the facts are clear that while [McNulty] may have been willing originally to have his blood drawn he clearly refused to allow the same to be done at the hospital once he wanted to read Section 3731 of the Vehicle Code. We believe the police officer explained to him clearly that he did not have the right to read that section prior to having his blood drawn and [McNulty] simply refused to consent until he had an opportunity to read Section 3731.
>
> He had obviously consented orally and the discussion at the hospital centered around his refusing to do so prior to being allowed to read Section 3731 and *there was no indication that he was willing to have blood drawn but just didn't want to sign the form.* (Emphasis added.)

(Opinion of the trial court, p. 4, 9/4/92.) After concluding that McNulty had no right to read section 3731 before submitting to the blood test, the trial court dismissed the licensee's appeal and affirmed DOT's one year suspension of McNulty's operating privileges.

In license suspension cases under § 1547, DOT bears the initial burden of proof. As we stated in *Department of Transportation v. Mease,* 148 Pa.Commonwealth Ct. 14, 17, 610 A.2d 76, 78 (1992):

In order to sustain a license suspension under Section 1547(b) of the Code, the Department must establish that: (1) the driver involved was arrested for driving while under the influence of alcohol; (2) the driver was requested to submit to a chemical test; (3) the driver refused to submit to the test; and (4) the driver had been specifically warned that refusal would result in suspension of his driver's license.

Furthermore, an appellate court's scope of review in a driver's license suspension case is limited to making certain that all necessary factual findings of the trial court are supported by competent evidence and ascertaining whether the trial court committed an error of law or an abuse of discretion. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

■ McNulty first argues that the trial court erred when it considered the licensee's refusal to sign the consent form as a refusal to submit to the blood test. He argues that this case is controlled by the holding of *Conrad v. Department of Transportation,* 142 Pa.Commonwealth Ct. 642, 598 A.2d 336 (1991), where we held that a motorist's license could not be suspended under 75 Pa.C.S. § 1547 when the undisputed evidence showed that the motorist stated on a number of occasions that he would take the blood test but would not sign a hospital consent form. As we stated:

Because § 1547 literally requires only that a motorist submit to chemical testing, and that the sanction of license suspension applies only to a refusal of such testing, we hold that a suspension under § 1547 may not be supported by a licensee's refusal to satisfy any condition not explicitly required by § 1547.

*Conrad,* 142 Pa.Commonwealth Ct. at 655, 598 A.2d at 343. According to McNulty's argument, because his signing of the hospital consent form is not required by § 1547, his refusal to sign the form does not constitute a refusal to take the blood test. Had McNulty agreed to take the blood test but merely refused to sign the hospital consent form, there would be merit to his argument. Unfortunately for McNulty, however, the trial court, as factfinder, did not find that McNulty's

suspension under § 1547 was based upon his refusal to sign the hospital consent form. On the contrary the court specifically credited Officer Schneeman's testimony that McNulty refused to submit to the blood test until he could read section 3731 and stated that "there was no indication that he was willing to have blood drawn but just didn't want to read the form." (Opinion of the trial court, p. 4.) Because the trial court's factual findings are supported by the testimony of Officer Schneeman we are required to accept them. *Department of Transportation, Bureau of Traffic Safety v. Korchak*, 506 Pa. 52, 483 A.2d 1360 (1984). Accordingly, *Conrad* is not applicable here.

 McNulty next argues that he had the right to read § 3731 before submitting to the blood test because he was confused by Officer Schneeman's references to § 3731. He then asserts that unless the police attempt to clarify his confusion, any refusal to submit to the chemical test is vitiated. In support of his argument, McNulty relies upon our decision in *Department of Transportation, Bureau of Driver Licensing v. Pszontak*, 144 Pa.Commonwealth Ct. 185, 601 A.2d 423 (1991). For the following reasons, we must also reject McNulty's second argument.

In *Pszontak*, the motorist was not informed of the rights guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) but was told that he could not speak with an attorney before taking the breathalyzer test. When the motorist insisted on speaking with his attorney, the police officer recorded a refusal. We affirmed the trial court's order sustaining the motorist's appeal of his license suspension, holding that once a motorist requests to speak with an attorney, the police must inform the motorist that such right does not extend to testing procedures required by § 1547.

We must note that one important distinction exists between *Pszontak* and the present case. The confusion in *Pszontak* was over the applicability of *Miranda* rights, specifically the right to consult with an attorney, while the case now being

decided in no way involves those rights.[2] McNulty offers no authority, nor are we aware of any, that stands for the proposition that confusion over something other than *Miranda* rights can serve to negate a refusal to submit to a chemical test for purposes of deciding if a suspension under § 1547 is warranted.[3]

We are guided by *Kitchenoff v. Department of Transportation,* 147 Pa.Commonwealth Ct. 552, 608 A.2d 645, *petition for allowance of appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992), in which the motorist refused to submit to a breath test and his license was suspended for that refusal. On appeal, he argued that the failure to give *O'Connell* warnings negated the consequences of the refusal. We rejected this argument, stating:

Licensee (who did testify) had only one complaint—that the [digital] display on the chemical testing equipment concerned him in that he believed that the appearance of the

**2.** On direct examination, McNulty specifically acknowledged that he never asked for an attorney. While McNulty was never informed of his rights under *Miranda,* the Supreme Court has recently held that *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989) is applicable even if *Miranda* warnings are not given whenever a motorist asks for an attorney. *Department of Transportation, Bureau of Driver Licensing v. McCann,* 533 Pa. 456, 626 A.2d 92 (1993).

**3.** The concept that "confusion" over the applicability of *Miranda* rights could serve to vitiate the consequences of a refusal to submit to testing had its genesis in this area in the Supreme Court's decision in *O'Connell,* where the court stated:

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the *right to counsel* when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their Miranda rights, are not being mislead into making uninformed and unknowing decisions to take the test. (Emphasis supplied.)

*O'Connell,* 521 Pa. at 253, 555 A.2d at 878. While we focused on the element of "confusion" for a short period, we made clear in *Department of Transportation, Bureau of Driver Licensing v. Fiester,* 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990), *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991), that *O'Connell* was applicable whenever a motorist requested a lawyer, thereby requiring the police to inform the motorist that *Miranda* rights did not apply to chemical tests under § 1547.

numbers on the display presented the potential for him to be prejudiced by an inaccurate reading. No O'Connell warning could have alleviated his concerns.

*Kitchenoff,* 147 Pa.Commonwealth Ct. at 556, 608 A.2d at 648. We recognize that *Kitchenoff* stands only for the proposition that *O'Connell* warnings are unnecessary where the motorist was confused about the workings of the breathalyzer, a subject other than the rights guaranteed by *Miranda.* Nonetheless, we believe *Kitchenoff* offers support for the more general proposition that confusion over issues other than *Miranda* rights does not negate a refusal based upon that confusion. It is impractical to require officers to explain every conceivable point which may confuse a motorist, particularly here where McNulty had offered reason for confusion requiring a reversal of the suspension of his license; Officer Schneeman correctly informed McNulty that he was being charged with driving under the influence of alcohol or a controlled substance in violation of § 3731. Under such circumstances, we must reject McNulty's argument that he was entitled to read § 3731.[4]

Affirmed.

## ORDER

AND NOW, this 22nd day of July, 1993, the August 4, 1992 order of the Court of Common Pleas of Crawford County at No. A.D. 1991–1122 is affirmed.

---

**4.** This opinion is not intended to foreclose forever the possibility of a licensee successfully arguing that confusion concerning something other than *Miranda* rights could negate the effect of a refusal to submit to testing because of that confusion. Rather, we are holding that McNulty's request to read § 3731 does not evince the type of confusion which, under the facts of this case, gives rise to the relief he seeks.