647 A.2d 958

Richard J. STACK

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing, Appellant.

Commonwealth Court of Pennsylvania.

Submitted May 27, 1994.

Decided Aug. 19, 1994.

Reargument Denied Oct. 25, 1994.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellant.

Jay Paul Kahle, for appellee.

Before CRAIG, President Judge, and NEWMAN, J., and DELLA PORTA, Senior Judge.

NEWMAN, Judge.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT) appeals an order of the Court of Common Pleas of McKean County (trial court) which sustained the appeal of Richard J. Stack (Stack) from a one-year suspension of operating privileges imposed by DOT pursuant to the Implied Consent Law, Section 1547 of the Vehicle Code (Code), *as amended*, 75 Pa.C.S. § 1547. We reverse the order of the trial court.

On January 6, 1993, Stack was notified by DOT that his operating privileges would be suspended for one year because of his refusal to submit to chemical testing on December 11, 1992. Stack appealed to the trial court, which conducted a *de novo* hearing on March 31, 1993.

At the hearing, DOT presented the testimony of Patrolman Thomas C. Munn of the Foster Township Police Department. Patrolman Munn testified that on December 11, 1992 he arrested Stack for violation of Section 3731 of the Code (driving under the influence of alcohol or controlled sub-

stance), 75 Pa.C.S. § 3731. At the scene of the arrest Stack agreed to submit to a blood test, and Patrolman Munn transported him to Bradford Hospital for that purpose. However, as they pulled into the hospital parking lot, Stack stated that he was unwilling to submit to testing because he was afraid of losing his license or his job. Stack has a commercial driver's license. Nevertheless, Stack accompanied Patrolman Munn to the hospital laboratory where he gave him a Bradford Hospital waiver of liability form to read.[1] Stack said that he was not going to submit to the test because of his concern that he might contract AIDS from the needle. Patrolman Munn took the form from Stack and asked him if would submit to the test without signing the form. Stack adamantly refused to take the test. Patrolman Munn testified that Stack never refused to sign the form, but he refused to have anything to do with the test.

Patrolman Munn further testified that he advised Stack that a one-year suspension of operating privileges would result if he refused to submit to chemical testing. Stack responded by becoming upset, and he again expressed his concerns about AIDS. Patrolman Munn made no further request to Stack regarding the blood test. Moreover, Patrolman Munn never told Stack that if he did not sign the waiver, the test would not be administered.

Stack testified that he recalled very little about his conversation with Patrolman Munn in the parking lot because he "was pretty well drunk that night." Notes of Testimony, Hearing of March 31, 1993, at 14. On direct examination, he testified as follows regarding his unwillingness to sign the hospital waiver form:

Q: And did you indicate to Officer Munn that you were not willing to sign that document?

A: Yeah. I think I told him I didn't want to sign it.

1. Although the Bradford Hospital form was not made part of the record, it is clear from the testimony that Stack was requested to sign a waiver of liability rather than a form consenting to a blood test administered by the hospital.

Q: And from that point on did he ever indicate to you that if you didn't sign that document that they wouldn't be able to give you the test?

A: No.

Q: Did he ever indicate to you that it was a requirement of the Commonwealth to sign that document?

A: I don't know. I don't think so, no.

Q: So after having read the document you advised him that you weren't going to sign, you advised him you are not going to get the test, is that correct?

A: Yeah I told him I wasn't willing to take it.

N.T. at 15.

On cross-examination, the following exchange took place counsel for DOT and Stack:

Q: And is it—do you recall, is it your testimony that when you were presented with the form that you simply said you wouldn't sign the form or that you wouldn't take the test?

A: I didn't want anything to do with that form because I couldn't sue the hospital or a darn thing after signing.

Q: Did you say I don't want to sign this form or did you say I don't want to take this test?

A: I think I said I didn't want to take the test and I think I said I didn't want to sign the form.

N.T. at 17.

At the conclusion of the March 31, 1993 hearing, the trial court sustained Stack's appeal and set aside the suspension of his operating privilege. The trial court grounded its decision on its belief that when a licensee is presented with a hospital waiver form, the police have an affirmative duty to advise the licensee that he need not sign the form. Only then can the licensee make a knowing choice regarding the decision to submit to chemical testing. DOT appealed to this court.

On appeal, DOT raises the following two issues: (1) whether presentation of a hospital waiver of liability form vitiates a motorist's express refusal to undergo chemical testing for alcohol; and (2) whether law enforcement personnel have an

affirmative duty to advise a motorist who is presented with a hospital release form that the release form need not be signed in order for the motorist to comply with the implied consent law.

When a motorist appeals a suspension of operating privileges pursuant to Section 1547(b) of the Code, 75 Pa.C.S. § 1547(b), DOT bears the burden of proving that the motorist (1) was placed under arrest for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal to do so would result in the suspension of his driver's license. *Larkin v. Commonwealth*, 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987). In this case, the only issue is whether Stack refused to submit to a chemical test.

The trial court found that Stack's actions did not constitute a refusal. Where an appeal has been taken from a final determination of a court of common pleas in an operating privilege suspension case, the appellate court's scope of review is limited to determining whether the trial court (1) made necessary findings of fact supported by substantial evidence; (2) committed an error of law; or (3) manifestly abused its discretion. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992); *Department of Transportation, Bureau of Traffic Safety v. Korchak*, 506 Pa. 52, 483 A.2d 1360 (1984). Because Stack was the prevailing party, he is entitled to all favorable facts and inferences that may be reasonably drawn from the evidence; all conflicts in the evidence must be resolved in Stack's favor. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888 (1990).

With respect to the first issue, we note that "[w]hether conduct as found by the trial court constitutes a refusal is a question of law." *Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 140 Pa.Commonwealth Ct. 484, 487, 593 A.2d. 932, 934, *petition for allowance of appeal denied*, 529 Pa. 625, 600 A.2d 541 (1991). It is clear that any response that is substantially less than an unqualified, unequivocal assent to a request to submit to chemical

testing constitutes a refusal. *Department of Transportation, Bureau of Driver Licensing v. Groscost,* 142 Pa.Commonwealth Ct. 36, 596 A.2d 1217 (1991); *Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa.Commonwealth Ct. 108, 468 A.2d 891 (1983). This court has determined that a refusal does not occur when a motorist agrees to submit to testing but refuses to sign a hospital waiver form. *Maffei v. Department of Transportation,* 53 Pa.Commonwealth Ct. 182, 416 A.2d 1167 (1980). However, where a motorist is unwilling to submit to chemical testing, the fact that the defendant refuses to sign a hospital waiver of liability form is irrelevant. *Appeal of Kilcullen,* 103 Pa.Commonwealth Ct. 521, 520 A.2d 947 (1987).

■ The instant case is governed by *Kilcullen,* because Stack refused to submit to chemical testing independent of his refusal to sign the waiver of liability. As Stack stated on cross-examination, "I think I said I didn't want to take the test and I think I said I didn't want to sign the form." N.T. at 17. Since Stack refused to undergo chemical testing, his decision not to sign the waiver is irrelevant to determine whether there was a refusal. Stack's statement that he did not want to take the test falls far short of the unqualified, unequivocal assent required under *Groscost.* Therefore, the trial court erred in determining that Stack did not refuse to submit to chemical testing.[2]

■ With respect to the second issue, the trial court determined that it is the duty of law enforcement authorities to explain to motorists that they are not obligated to sign a hospital waiver of liability form. The trial court held that once a motorist is presented with a liability form he may become confused and may not understand his rights absent such an explanation. The court analogized this situation to the one addressed in *Department of Transportation, Bureau*

2. Additionally, we note that it is impermissible for the signing of a hospital waiver form to be linked to consent to submit to chemical testing. *Conrad v. Department of Transportation,* 142 Pa.Commonwealth Ct. 642, 598 A.2d 336 (1991). Our review of the testimony indicates that no such impermissible linkage occurred in this case.

*of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). In *O'Connell,* the Supreme Court held that when a police officer gives *Miranda* [3] warnings to a motorist arrested for drunken driving before requesting that he or she submit to chemical testing, the officer must explain to the motorist that the right to counsel does not apply to chemical testing under the Implied Consent Law. The purpose of this explanation is to avoid confusion for the motorist.

This court has consistently held that confusion over issues other than *Miranda* warnings will not negate the effect of a refusal to submit to chemical testing. Accordingly we have upheld DOT's suspension of operating privileges in a variety of situations. In *Appeal of Attleberger,* 136 Pa.Commonwealth Ct. 329, 583 A.2d 24 (1990), *appeal dismissed as improvidently granted,* 531 Pa. 450, 613 A.2d 1203 (1992), we held that *O'Connell* does not apply where a motorist is confused over the significance of a pre-arrest breath test. We have also refused to expand the scope of *O'Connell* to circumstances where a motorist was confused over the consequences of a refusal to submit to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa.Commonwealth Ct. 38, 571 A.2d 1104 (1990). In *Kitchenoff v. Department of Transportation,* 147 Pa.Commonwealth Ct. 552, 608 A.2d 645, *petition for allowance of appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992), we refused to allow an *O'Connell* defense where a motorist was confused about the workings of a breathalyzer test. Furthermore, we rejected an *O'Connell* confusion defense where a police officer denied a motorist the opportunity to read Section 3731 of the Vehicle Code (driving under the influence of alcohol or controlled substance), before requesting him to sign a consent to testing form. *McNulty v. Department of Transportation, Bureau of Driver Licensing,* 157 Pa.Commonwealth Ct. 260, 629 A.2d 278 (1993). As we stated in *McNulty,* "It is impractical to require officers to explain every conceivable point which may confuse a motorist...." *Id.* at 268, 629 A.2d at 282.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Therefore, we conclude that the trial court erred as a matter of law when it held that a police officer has an affirmative obligation to inform a motorist that he need not sign a hospital waiver of liability.

For these reasons, the order of the trial court is reversed.

## ORDER

AND NOW, August 19, 1994, the order of the Court of Common Pleas of McKean County in the above-captioned matter is reversed.

DELLA PORTA, Senior Judge, dissenting.

I respectfully dissent. This case is on all fours with *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). In *O'Connell*, the Supreme Court rejected the conclusion that anything short of an unqualified assent to take the test under these circumstances is viewed as a refusal, *Id.* at 250, 555 A.2d at 877, and went on to say:

> This state of affairs *is unacceptable* because it is fraught with pitfalls for the arrestee who is not trained to recognize the difference between a civil or criminal investigation and becomes a source of accusations of manipulation by the police over confused individuals who are suspected of having dulled senses.

*Id.* at 252, 555 A.2d at 877 (emphasis added).

In the *O'Connell* case the confusion was over the right to counsel in the criminal charge of Driving Under the Influence and the requirement to take the chemical test. Here we have a confusion over the request by the policeman, after the arrestee had agreed to submit to the test, to sign a hospital waiver of liability form and the submission to a blood test, which was further compounded by the arrestee's fear of contracting AIDS by the use of a needle for the blood test. The two circumstances could not be more analogous. The Supreme Court concluded that

[s]ince the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify ... thereby insuring that those arrestees who indicate their confusion ... are not being misled into making uninformed and unknowing decisions to take the test.

*Id.* at 253, 555 A.2d at 878.

In reaching this conclusion the Court reiterated that "making a knowing and conscious refusal to take the test ... is a *factual* determination which is to be made by the trial court." *Id.* at 249, 555 A.2d at 876 (emphasis added). "The trial court chose to believe Appellant, and his findings in this regard are conclusive.... To the extent that the Commonwealth Court chose to accept and reject portions of Appellant's testimony and, in effect, to make its own findings of fact, it exceeded its scope of review...." *Id.* at 249–50, 555 A.2d at 876.

In the case *sub judice,* our scope of review is limited to whether there is in the record sufficient evidence which is adequate to support the necessary findings of fact made by the trial court, bearing in mind that we must resolve all doubts and reasonable inferences that can be drawn from the evidence in favor of the Appellee. *Penflex, Inc. v. Bryson,* 506 Pa. 274, 485 A.2d 359 (1984). I submit that the answer is definitely yes and, therefore, "we are precluded from overturning that finding and must affirm" the trial court's decision. *O'Connell,* 521 Pa. at 248, 555 A.2d 875.