**PARKVIEW COURT ASSOCIATES,**
Appellant

v.

**DELAWARE COUNTY BOARD OF ASSESSMENT APPEALS and Yeadon Borough.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2008.

Decided Oct. 24, 2008.

Thomas H. Broadt, Media, for appellant.

Francis J. Catania, Media, for appellee.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this real estate tax assessment appeal involving an apartment complex and an adjoining small shopping center in Yeadon Borough (Borough), Delaware County, we are asked to determine whether the Delaware County Common Pleas Court (trial court) erred in accepting the William Penn School District's (Taxing Authority) expert's valuation of the property's annual net income. Parkview Court Associates (Taxpayer) appeals a non-jury verdict that established the property's fair market values and assessment values for the tax years 2005–08.[1] For the following reasons, we affirm.

## I. Background

The residential and commercial property at issue, approximately 31.6 acres in the Borough, includes a 960–unit apartment complex which is divided into 26 buildings. The 960 units are comprised of 676 one-bedroom and 280 two-bedroom units. Located next to the apartment complex is a small strip shopping center with 25,700 square feet of rental space. The small shopping center is divided into seven rental spaces, with the anchor tenant being a food store.

In July 2004, Taxpayer appealed the County assessment of $22,000,000 for the 2005 tax year. The Delaware County Board of Assessment Appeals denied Taxpayer's appeal. Taxpayer appealed to the trial court. The Taxing Authority, joined by the Borough, opposed the appeal. The case proceeded to trial in the summer of 2007. Due to the length of this matter, the appeal is applicable for tax years 2005–08.[2]

At trial, Taxpayer and Taxing Authority presented expert opinions from real estate appraisers as to the property's fair market value. Both experts performed income and sales comparison valuations of the property.[3] Neither expert found the cost approach (cost of reproduction or replacement, less depreciation and obsolescence) applicable here.

For each tax year at issue, Robert Graham (Taxpayer's expert), performed an in-

---

1. Appellee Delaware County Board of Assessment Appeals failed to timely file a brief and is precluded from participation.

2. *See* Section 9(c) of the Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. § 5350(c) (automatic appeal provision in applicable assessment statute).

3. "The income approach calculates the value of income-producing property by capitalizing the property's annual net income. Net in-come is derived by deducting the property's actual annual expenses from the year's gross income." *Appeal of V.V.P. P'ship*, 167 Pa. Cmwlth. 282, 647 A.2d 990, 991 n. 1 (1994). "The sales comparison approach compares the subject property to other similar properties which have been sold, giving consideration to the size, age, physical condition, location, neighborhood, extra amenities, date of sale, lot size, style of building, unique features, and type of financing." *Id.* at 991 n. 2.

come valuation and reconciled it with a sales comparison valuation. In his income approach, Taxpayer's expert calculated Taxpayer's gross income and then deducted its actual expenses from gross income. Reproduced Record (R.R.) at 46a. He reviewed Taxpayer's financial statements and examined its income and expense statements for each tax year at issue. Id. at 45a–46a, 48a–49a, 52a, 54a, 57a, 62a, 64a.

Taxpayer's expert testified Taxpayer's expense statements did not include its sewer expenses. Id. at 47a–48a. Because the Borough billed Taxpayer's sewer charges with its real estate taxes, Taxpayer listed its sewer bills with its real estate taxes. Id. at 48a. He further testified the sewer bills needed to be pulled out of the real estate taxes and added back into expenses. Id.

Taxpayer also presented testimony from Jason R. Carroll (Assets Manager), an employee of Mid–America Management Corp., which manages Taxpayer's apartment complex. Mid–America is located in Cleveland, Ohio, and owns or manages over 6100 apartment units across the country. Id. at 88a–89a. Assets Manager manages Taxpayer's apartment complex. Id. at 89a–90a. However, Taxpayer's income and expense statements are prepared by Mid–America in Cleveland. Id. at 95a. Assets Manager provided these financial records to Taxing Authority's expert. Id. at 100a.

Assets Manager further testified the Borough's sewer charges are included in its real estate tax bills. Id. at 101a–02a. See also Taxpayer's Real Estate Tax Summary (2004–07); R.R. at 358a. However,

Mid–America's accounting department kept using the "water/sewer" record entry for Taxpayer's property rather than change its entire computer system because of this one property's unique circumstances. Id. at 101a–02a. As a result, Taxpayer's "water/sewer" entry is actually for water expenses only. Id.

Based on his income and sales comparison approaches, Taxpayer's expert opined as to the following fair market values, State Tax Equalization Board (STEB) ratios and assessments:

| Tax Year | FMV | STEB Ratio | Assessment |
|---|---|---|---|
| 2005 | $21,000,000 | 79.5% | $16,695,000 |
| 2006 | $23,000,000 | 72.5% | $16,675,000 |
| 2007 | $24,000,000 | 64.5% | $15,480,000 |
| 2008 | $27,000,000 | 60.97% | $16,461,900 |

Trial Ct. Op. at 2.[4]

Taxing Authority presented John J. Coyle III (Taxing Authority's expert). He also performed income and sales comparison valuations of the property. In his income approach analysis, he used the financial statements supplied by Taxpayer. R.R. at 167a. However, he did not use the exact numbers given to him; he made adjustments. Id. at 195a.

In determining Taxpayer's actual expenses, Taxing Authority's expert explained various ways in which utility expenses were handled. He reviewed Taxpayer's actual records. Id. at 169a. These included not only the records of expenses submitted by Taxpayer's management company, but also the tenants' monthly "charge back" payments for utilities.[5] Id. at 173a. In order to stabilize these fluctuating actual figures, Taxing Authority's expert compared Taxpayer's operating expenses to studies from organizations such as the In-

---

**4.** See also (Notes of Testimony), 07/10/07, Ex. A–11 (Taxpayer's Expert's Opinion of Fair Market Values and Proposed Assessment).

**5.** Taxpayer's tenants make two monthly payments; they pay rent and also pay a "charge back" for utilities. R.R. at 173a. The monthly utilities charge averages about $30–$40 per apartment.

stitute for Real Estate Management. *Id.* at 169a.

Taxing Authority's expert acknowledged real estate taxes are not considered expenses in determining net income in a tax assessment appeal. *Id.* at 209a. With regard to Taxpayer's real estate taxes, Taxing Authority's expert stated that after a stabilized net income is estimated, a capitalization rate is determined. *Id.* at 170a. Part of the process of determining a capitalization rate includes an adjustment for the real estate tax load burden. R.R. at 170a, 173a. *See also* Taxing Authority's Appraisal at I–8; R.R. at 428a.

Taxing Authority's expert also agreed sewer expenses should be considered part of the actual utility bill. *Id.* at 209a. He further acknowledged he did not know whether Taxpayer's real estate bill included its sewer charges;[6] however, he stated Taxpayer's reports did not report it that way. *Id.* at 211a, 214a.

Notably, Taxing Authority's expert did *not* agree that Taxpayer's 2004 sewer bill of $198,000 should be added to its $882,000 in expenses listed as "utilities," thereby raising Taxpayer's 2004 total "utilities" to over $1,000,000. *Id.* at 211a–12a. Rather, he opined it would change the real estate tax calculation. *Id.* at 212a. What is really important, he stressed, is how Taxpayer accounts for its sewer charges. *Id.* at 214a. "It is either in utilities or it is in real estate taxes." *Id.* at 212a.

As noted by the trial court, Taxing Authority's expert opined as to the following fair market values, STEB ratios and assessments:

| Tax Year | FMV | STEB Ratio | Assessment |
| --- | --- | --- | --- |
| 2005 | $27,500,000 | 79.5% | $21,862,500 |
| 2006 | $28,100,000 | 72.5% | $20,372,500 |
| 2007 | $29,225,000 | 64.7% | $18,908,575 |
| 2008 | $30,350,000 | 61.1% | $18,543,850 |

Trial Ct. Op. at 2–3.[7]

Ultimately, the trial court expressly found Taxing Authority's expert "to be competent, credible and convincing . . . ." Id. at 3. With some minor adjustments not at issue here, the trial court adopted Taxing Authority's expert's findings, opinions and conclusions. Id. It therefore entered a verdict establishing the following fair market values, STEB ratios and ultimate assessments:

| Tax Year | FMV | STEB Ratio | Assessment |
| --- | --- | --- | --- |
| 2005 | $27,000,000 | 79.5% | $21,465,000 |
| 2006 | $28,000,000 | 72.5% | $20,300,000 |
| 2007 | $29,000,000 | 64.7% | $18,763,000 |
| 2008 | $30,000,000 | 61.1% | $18,330,000 |

Trial Ct. Op. at 1–2. Taxpayer appeals.[8]

## II. Argument

Taxpayer raises only one issue. It asserts Taxing Authority's expert significantly erred in performing his income approach valuation by failing to deduct the property's substantial sewer expense, billed in the Borough's real estate tax bill, from gross income in arriving at the property's net income. Taxpayer thus contends Taxing Authority's expert overvalued its net income by the amount of the overlooked sewer costs.

---

6. Taxing Authority's counsel argued there is no documentary evidence showing the Borough's real estate tax bill in fact included the sewer charges. *See* R.R. at 209a–10a.

7. *See* Taxing Authority's Appraisal Report at J–1—J–3; R.R. at 429a–31a.

8. Our review of tax assessment appeals is limited to determining whether errors of law were committed, an abuse of discretion occurred, or constitutional rights were violated. *Green v. Schuylkill County Bd. of Assessment Appeals*, 565 Pa. 185, 772 A.2d 419 (2001); *Jackson v. Bd. of Assessment Appeals of Cumberland County*, 950 A.2d 1081 (Pa.Cmwlth. 2008). While the weight of the evidence is before the appellate court for review, the trial court's findings are entitled to great weight and will be reversed only for clear error. *Id.*

For example, in 2004, the overlooked sewer costs totaled $198,000. Taxpayer asserts that if Taxing Authority's expert's tax-load adjusted capitalization rate of 12.35% is used, he overvalued the property's 2004 fair market value by $1,603,238.87. Further, applying Taxing Authority's expert's formulas for subsequent years, Taxpayer asserts the failure to deduct the total sewer costs from the property's gross income allegedly resulted in the following overvaluations: (2005) $1,787,054; (2006) $1,927,204; (2007) $2,665,050. For this reason, Taxpayer asserts the trial court's findings are not supported by substantial evidence and therefore not binding on this Court. *See Menno Haven, Inc. v. Franklin County Bd. of Assessment and Revision of Taxes,* 919 A.2d 333 (Pa.Cmwlth.), *appeal denied,* 596 Pa. 711, 940 A.2d 367 (2007) (trial court's findings are binding only if supported by substantial evidence).

Taxpayer asserts the trial court erred in not crediting Taxpayer's expert's valuation of the property. This expert severed the sewer charges from the real estate taxes and added them back into expenses. Taxing Authority's expert did not.

Consequently, Taxpayer contends Taxing Authority's expert fundamentally erred in calculating Taxpayer's operating expenses because of his lack of knowledge of the accounting quirk involving the "sewer/water" line item entry in Taxpayer's expense statements. Thus, Taxpayer asserts the overlooked sewer costs substantially increased its actual expenses and diminished its net income and also its fair market value.

As such, Taxpayer asserts the trial court's failure to adopt Taxpayer's expert's fair market value, which included the sewer costs as an operating expense, constitutes an abuse of discretion, an error of law, and resulted in a verdict unsupported by the evidence. Alternatively, Taxpayer requests this Court reduce the trial court's fair market value for the tax years at issue by the following amounts: (2005): $1,603.238.87; (2006) $1,787,054.00; (2007) $1,927,204.00; (2008) $2,665,050.00.

Taxing Authority counters the trial court's decision is fully supported by competent evidence and that this Court cannot reweigh the evidence, credit Taxpayer's witnesses or revise the valuation determined by Taxing Authority's expert. More particularly, Taxing Authority asserts its expert could rely on financial data provided by Taxpayer and the trial court could, in turn, rely on Taxing Authority's expert's opinion. Taxing Authority further asserts its expert did not revise his opinion based on Taxpayer's cross-examination regarding Taxpayer's accounting practices. Taxing Authority also asserts the trial court did not accept Taxing Authority's expert's opinion but revised it downward. Taxing Authority emphasizes that the trial court's findings are entitled to great deference and cannot be disturbed absent clear error.

■ "The trial court has the discretion to decide which of the methods of valuation is the most appropriate and applicable to the given property." *Willow Valley Manor v. Lancaster County Board of Assessment Appeals,* 810 A.2d 720, 723 (Pa.Cmwlth.2002). "In tax assessment appeals, actual value or fair market value is determined by competent witnesses testifying as to the property's worth in the market; i.e., the price a willing buyer would pay a willing seller, considering the uses to which the property is adapted and might reasonably be adapted." *Id.*

■■ In performing *de novo* review in tax assessment appeals, the trial court is the ultimate finder of fact. *In re Penn–Delco Sch. Dist.,* 903 A.2d 600 (Pa.Cmwlth.

2006). "As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence." Id. at 608. "As a result, this Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result." Id.

We affirm the trial court's valuation determinations and assessments. With minor adjustments, the trial court adopted Taxing Authority expert's findings, opinions and conclusions.[9] Trial Ct. Op. at 3.

Here, in performing his income approach analysis, Taxing Authority's expert took Taxpayer's expenses, including utilities, into consideration in several ways. First, Taxing Authority's expert utilized the income and expense statements given him by Taxpayer, information Taxpayer now challenges as confusing. Second, he considered payments actually made by tenants to Taxpayer for utility charges. The reliability of this evidence is not in dispute. Third, he compared Taxpayer's operating expenses to independent studies.

▪ In addition, Taxing Authority's expert factored Taxpayer's real estate taxes into its tax-load adjusted capitalization rate.[10] He accounted for Taxpayer's real estate taxes by adjusting the capitalization rate upward. No error is assigned to this approach. Thus, the trial court could conclude that the detailed method described by Taxing Authority's expert was sufficient to accurately reflect the burden of government charges against the property.

Moreover, the trial court could also conclude that Taxing Authority's expert's multi-factor method was intended to stabilize fluctuating expense figures and was sufficient to yield a reliable net income. See Willow Valley Manor (in making a stabilized expense projection, an appraiser need not rely entirely on historic expenses; he may also consider industry standards).

When confronted with the claimed accounting oversight issue, Taxing Authority's expert neither repudiated nor changed his opinion on value. R.R. at 211a–14a. Taxing Authority's expert testified the utilities are what you report them to be and sewer charges are either listed in Taxpayer's "utilities" or listed in Taxpayer's "real estate taxes." Id. at 212a. For example, Taxpayer listed its 2004 "utilities" expense as approximately $882,000; it cannot add another $200,000 for sewer charges if they are not listed in "utilities." Id. at 213a–14a.

In sum, Taxing Authority's expert's testimony and appraisal provided competent evidence which supports the trial court's verdict. Taxpayer's argument essentially seeks a new credibility finding based on its dispute of Taxing Authority's expert's methodology, which is inappropriate on appeal. Penn–Delco; Willow Valley Manor (trial court has discretion to determine which method of valuation is most appropriate for the property).

Discerning no error in the trial court's decision, we affirm.

---

9. In appeals arising from non-jury verdicts, an appellate court considers the evidence in a light most favorable to the verdict winner. Nevyas v. Morgan, 921 A.2d 8 (Pa.Super.2007) See also Stack v. Dep't of Transp., 166 Pa. Cmwlth. 703, 647 A.2d 958 (Pa.Cmwlth.1994) (on appeal, prevailing party is entitled to all favorable inferences reasonably drawn from the evidence and all evidentiary conflicts are to be resolved in its favor).

10. In an income approach analysis, fair market value is determined by dividing the annual net rental income by an investment rate of return, or capitalization rate. 1198 Butler Street Assocs. v. Bd. of Assessment Appeals, County of Northampton, 946 A.2d 1131 (Pa. Cmwlth.2008).

## *ORDER*

AND NOW, this 24th day of October, 2008, the order of the Court of Common Pleas of Delaware County is **AFFIRMED.**