**James A. ARMSTRONG**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 28, 1997.

Decided May 29, 1997.

Timothy P. Wile, Assistant Counsel In-Charge, and Harold H. Cramer, Assistant Chief Counsel, for appellant.

No appearance entered for appellee.

Before SMITH and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the March 26, 1996 order of the Court of Common Pleas of Fayette County (trial court) that sustained the statutory appeal of James A. Armstrong (Armstrong) from the one-year suspension of his driver's license. The question presented by DOT is whether a trial court may find that a licensee's refusal of a chemical test was not knowing and conscious once the trial court finds that the licensee was provided with a legally sufficient *O'Connell* warning.[1]

On March 18, 1995, Armstrong was arrested by a Pennsylvania State Trooper for driving under the influence of alcohol. By official notice dated April 20, 1995, DOT informed Armstrong that his operating privilege was suspended for one year as a result of his reported refusal to submit to chemical testing, pursuant to Section 1547(b)(1) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1547(b)(1). Armstrong appealed to the trial court, and a de novo hearing was held pursuant to Section 1550 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1550.

At the hearing, Armstrong and DOT stipulated to three facts: Trooper Jeffrey A. Fisher arrested Armstrong for driving under the influence on March 18, 1995; Trooper Fisher had reasonable grounds to make the arrest; and Trooper Fisher had reasonable grounds to request Armstrong to submit to a chemical test of his blood or breath. Trooper Fisher testified that he informed Armstrong, in the patrol car, that he would be taken to Uniontown Hospital for a blood test and that Armstrong agreed to go to the hospital. Once there Trooper Fisher advised Armstrong that "he had the implied consent to submit to one or more chemical tests for the purpose . . . of determining a blood alcohol content. At the end of it, I just told him that if he didn't submit to the chemical test of blood, he would lose his license for one (1) year. . . ." N.T., at 7. Armstrong was confused and did not understand his rights. Trooper Fisher testified that he advised Armstrong that he did not have a right to an attorney but later stated that he did not fully inform Armstrong of his rights until they returned to the barracks.

Trooper Fisher transported Armstrong back to the barracks, where for the first time he read to Armstrong DOT's implied consent warnings form (Commonwealth Ex. 1)[2] so that he could fully inform Armstrong of the warnings and allow him an opportunity to understand them. Upon questioning by the trial court, Trooper Fisher stated that he afforded another opportunity to Armstrong to take the blood test and that if Armstrong had agreed, he would have been transported back to the hospital. Trooper Fisher admitted that Armstrong was truly confused at the barracks, and he conceded on cross-examination that once Armstrong understood the full warnings given to him at the barracks, he agreed to take the test. Notwithstanding these events, the Trooper had already determined that there was a refusal by Armstrong and refused to allow him to take the test.

■ Armstrong, on the other hand, testified that he didn't understand his rights and

1. By order of January 16, 1997, this Court precluded Armstrong from filing a brief because he failed to respond to DOT's brief in a timely manner.

2. DOT's "Section 1547 Chemical Testing Warnings" contained in Commonwealth Ex. 1 include a very express *O'Connell* warning along with the basic Implied Consent Law warning.

that he was never advised at the hospital that he did not have a right to counsel. Trooper Fisher read DOT's implied consent warnings form only once, not three or four times as he stated, after they arrived at the barracks. After reading the form along with Trooper Fisher, Armstrong understood that he had no right to counsel and no other option, and, as a consequence, he consented to take the test. At that point, Trooper Fisher told him that he had already refused testing at the hospital. The trial court found that Armstrong did not willfully or deliberately refuse to submit to testing and sustained his appeal.[3] The court stated in pertinent part: "[Armstrong's] testimony as to his confusion and misunderstanding of his rights to counsel as it applied to the implied consent law, was corroborated by [Trooper Fisher's] testimony that [Armstrong] did exhibit confusion." Tr. Ct. Opinion, p. 1.

In *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), the Supreme Court held that an arresting officer has a duty to clarify to the motorist that the right to counsel as provided by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is inapplicable to a chemical test request. In *O'Connell* the Supreme Court reiterated that in license suspension cases under Section 1547(b), the Commonwealth has the burden of proving that (1) the licensee was arrested for driving while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit to chemical testing; and (4) the licensee was specifically warned that refusal would result in a license revocation.

█ Because the trial court is in the sole position to observe the witnesses and to judge their credibility, the court's findings will not be disturbed on appeal if they are supported by sufficient evidence of record. *O'Connell.* The sole issue here is whether DOT met its burden of proving that Armstrong refused to submit to the blood test. In its role as the ultimate fact finder, the

trial court determined the conflicts in the record in favor of Armstrong.

DOT argues that *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996), supports its position that the Court should remand this case to the trial court to resolve any conflicts between the testimony of Trooper Fisher and Armstrong concerning circumstances surrounding the Trooper's reading of the *O'Connell* warnings to Armstrong. DOT maintains that, pursuant to *Scott,* once Armstrong was properly advised of his *O'Connell* warnings, his subjective beliefs that he was entitled to speak to an attorney are insufficient to support a conclusion that he was incapable of making a knowing and conscious refusal. The Supreme Court held in *Scott* that, although an officer erroneously informed the motorist that he did not have the right to an attorney "in a drunk driving case," the motorist's confusion was cured by the subsequent reading of valid *O'Connell* warnings. Under *Scott* a motorist must now be provided with *O'Connell* warnings when requested to submit to chemical testing, regardless of whether the motorist has been given *Miranda* warnings or exhibited confusion over his or her rights.

The *Scott* decision does not control the outcome here because the particular facts are markedly different from those in *Scott.* The trial court specifically found that Armstrong was confused and misunderstood his rights and that his testimony in this respect was corroborated by Trooper Fisher. Furthermore, the Trooper's testimony established that he read DOT's implied consent warnings form for the first time at the barracks to fully inform Armstrong of those warnings, after which Armstrong would be allowed another opportunity to take the test if he agreed. In response to questioning by the court, Trooper Fisher agreed that he would allow Armstrong an opportunity to consent to testing after the full warnings were read to him. The Trooper, nevertheless, recorded a refusal once Armstrong signaled an under-

---

3. This Court's scope of review of the trial court's order is limited to determining whether the factual findings of the trial court are supported by competent evidence and whether the trial court

committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Walsh,* 146 Pa.Cmwlth. 461, 606 A.2d 583 (1992).

standing of his rights and agreed to take the test.

*O'Connell* warnings include information to the licensee that his or her license privileges will be suspended for one year if the licensee refuses to submit to chemical testing and that the right to speak to an attorney or anyone else is inapplicable to chemical testing. *Scott.* However, in *Frengel v. Department of Transportation, Bureau of Driver Licensing,* 666 A.2d 785 (Pa.Cmwlth.1995), the Court held that even if an officer provides a sufficient *O'Connell* warning, a license suspension imposed upon a licensee for his or her refusal to submit to testing must be reversed where the trial court determines that the factual circumstances surrounding the police officer's request for testing are confusing and prevent the licensee from understanding the warning. The *Frengel* decision, relied upon by the trial court, does not conflict with *Scott;* it merely recognizes the trial court's fact finding domain with which this Court may not interfere.

There is little doubt from reading the record in the case sub judice that the trial court had sufficient evidence to make a factual determination that the circumstances created confusion and misunderstanding by Armstrong, such that he was precluded from making a knowing and conscious refusal to submit to testing. DOT contends that once Trooper Fisher read a valid *O'Connell* warning to Armstrong, his confusion was then cured under *Scott.* The Court cannot disagree that DOT's contention represents the current state of the ever-evolving law in this area. Nonetheless, DOT is still left with Trooper Fisher's testimony that he returned Armstrong to the barracks to provide to him full warnings and an opportunity to consent to the test.

DOT, the burdened party, failed to establish that Trooper Fisher provided an *O'Connell* warning at the hospital. Armstrong agreed to take the test at the barracks, where the *O'Connell* warning was given, once he understood the warnings. Trooper Fisher refused to allow it. Whether the *O'Connell* warning was given more than one time, as DOT insists, is of no significance where Trooper Fisher did not specify to Armstrong that the warning would be given only once. Thus, under any analysis, the Court cannot conclude that Armstrong refused chemical testing. Therefore, this situation warrants neither a reversal nor a remand. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 29th day of May, 1997, the order of the Common Pleas Court of Fayette County is affirmed.