**Thomas J. McCLOSKEY, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 23, 1998.

Decided Jan. 12, 1999.

Michael E. Moyer, Allentown, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

KELLEY, Judge.

Thomas J. McCloskey (licensee) appeals from the April 23, 1998 order of the Court of Common Pleas of Lehigh County (trial court) denying his statutory appeal and directing the Department of Transportation, Bureau of Driver Licensing (department) to reinstate the one-year suspension of licensee's operating privilege imposed pursuant to section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547. We affirm.

By official notice dated December 18, 1997, the department informed licensee that his operating privilege was suspended for one-year as a result of his refusal to submit to chemical testing on December 3, 1997. Licensee appealed his suspension to the trial court. After a hearing *de novo*, the trial court found the following facts.

On December 3, 1997, Officer Glenn Deist of the Northampton Borough Police Department arrested licensee for driving under the influence of alcohol or a controlled substance pursuant to section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731. Immediately following licensee's arrest, Officer Steven Milkovits, also of the Northampton Borough Police Department, advised licensee of the implied consent law. Licensee agreed to be transported to the Northampton County DUI Center in Easton, Pennsylvania for a blood test.

Deputy George Bruneio of the Northampton County Sheriff's Office was processing arrestees at the DUI center on December 3, 1997, when licensee arrived. As part of the

DUI processing, Deputy Bruneio advised licensee that his refusal to take a blood test would result in the suspension of his operating privilege.[1] Deputy Bruneio also informed licensee that because the chemical testing procedure was civil in nature, he was not entitled to consult with counsel prior to the test and that his *Miranda*[2] rights did not apply. Deputy Bruneio further advised licensee that he must affirmatively express his willingness to take the blood test.

Following his recitation of the implied consent law, Deputy Bruneio specifically requested that licensee submit to a blood test. Deputy Bruneio then repeated the chemical testing warnings a second time. Nevertheless, licensee asked Deputy Bruneio to repeat the warnings once again, at which point the deputy handed licensee department form DL–26.[3] Licensee indicated that reading the form would assist him to understand his rights. Licensee studied form DL–26 for several minutes and asked a few questions, but continued to press Deputy Bruneio for more time to make a decision. In response to licensee's delay, Deputy Bruneio again read the warnings and asked licensee directly whether or not he would submit to a blood test. At no time did licensee affirmatively consent to take a blood test. After approximately eight minutes had elapsed from his first reading of the implied consent warnings, Deputy Bruneio recorded a refusal by licensee to submit to a blood test.

Based on these facts, the trial court concluded that, by his conduct, licensee refused to submit to a blood test pursuant to section 1547 in light of the chemical testing warnings. The trial court pointed out that the entire process between licensee and Deputy Bruneio was recorded on videotape, which tape was admitted into evidence. The trial court stated that not only could it make its findings of fact based upon the testimony, but also upon the observations of the actual conduct of Deputy Bruneio and licensee. Thus, the trial court determined that based on the testimony and the videotape, licensee's conduct belied his claim that he was confused by the implied consent warnings and that he was more likely than not stalling for time. Accordingly, the trial court denied licensee's appeal and directed the department to reinstate the one-year suspension of licensee's operating privilege. This appeal followed.

On appeal to this court, licensee presents the issue of whether the trial court erred, as a matter of law, in finding that licensee refused to submit to a chemical blood test.

▮▮▮▮ Our scope of review in an operating privilege suspension case is confined to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Ingram*. Questions of credibility and conflicts in the evidence presented are for the trial court to resolve. *Id.* If there is sufficient evidence in the record to support the findings

---

1. Deputy Bruneio's processing of licensee was videotaped, which tape was admitted into evidence.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Form DL–26 contains the chemical testing warnings required by section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, and our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Section 1547 provides, in part, that any person operating a motor vehicle shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the blood alcohol content or the presence of a controlled substance if the police officer has reasonable grounds to believe that the person was operating the motor vehicle while under the influence of alcohol or a controlled substance. Section 1547(b)(1) provides that any person placed under arrest for driving while under the influence is requested to submit to a chemical test and refuses to do so, the department shall suspend the person's operating privilege for a period of 12 months.

Our Supreme Court has held that a proper *O'Connell* warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 256, 648 A.2d 285, 294–95 (1994).

of the trial court we must pay proper deference to it as fact finder and affirm. *Id.*

In order to sustain a license suspension under section 1547 of the Vehicle Code, the department must prove that the licensee (1) was arrested for driving under the influence of alcohol or controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that refusal would result in the revocation of his vehicle operating privilege. *Id.* (citing *O'Connell,* 521 Pa. at 248, 555 A.2d at 876). Once the department meets its burden, it is the licensee's responsibility to prove that he was not capable of making a knowing and conscious refusal to take the chemical test. *Id.*

Herein, licensee contends that he did not refuse to submit to chemical testing when he delayed his decision because of confusion as to his legal rights. Licensee argues that this case is controlled by our recent decision in *McDonald v. Department of Transportation, Bureau of Driver Licensing,* 708 A.2d 154 (Pa.Cmwlth.1998). Licensee contends that this court in *McDonald* held that it could not determine that ten to fifteen minutes of questioning concerning the licensee's rights when confused constitutes a refusal. Licensee argues that in his case only eight minutes elapsed until his refusal was recorded, despite his attempts to clarify his confusion. We believe that, based on the facts of the instant case as found by the trial court, licensee's reliance on *McDonald* is misplaced.

In *McDonald,* the licensee appealed the suspension of her operating privilege to the trial court. Before the trial court, both the licensee and the arresting officer testified. The licensee testified that she was confused regarding the warnings contained in form DL–26 resulting in her asking the arresting officer several questions. According to the officer's testimony, this exchange lasted ten to fifteen minutes. During this time, the licensee testified that the consent form was taken from her as she was trying to sign it. The consent form contained the first two letters of a signature of the licensee's first name. The licensee never stated to the officer that she would or would not submit to a blood test.

The officer testified that he took the consent form away from the licensee because she was just playing with him. He testified further that the licensee wrote the first letter of her name then stopped to ask questions, wrote the second letter, and stopped again. It was at that point that the officer took the consent form away and deemed her behavior a refusal.

The licensee testified that she did not believe there was a pause in her attempt to sign the form and she denied that she was playing around, insisting that she simply wanted to comprehend before signing. The licensee testified that she was consenting to the blood test by signing the form.

The trial court found the testimony of the licensee to be credible. *McDonald* at 155. The trial court found further that by attempting to sign the form, the licensee was assenting to the blood test and believed the licensee's testimony in this regard. Accordingly, the trial court sustained the licensee's appeal and the department appealed to this court.

On appeal, we pointed out that the trial court found the licensee's testimony, not the officer's testimony, credible. *Id.* at 156. We stated that the trial court found that the licensee was confused regarding the information on the consent form, that she was agreeing to take the blood test by attempting to sign the form taken away from her by the officer, and that she was willing to provide a blood sample. *Id.*

We recognized that it is not a refusal for purposes of section 1547 of the Vehicle Code, when a licensee reasonably delays a decision because of confusion as to his or her rights and then assents to submit to a chemical test when those rights are made clear. *Id.* (citing *Armstrong v. Department of Transportation, Bureau of Driver Licensing,* 695 A.2d 930 (Pa.Cmwlth.1997)). We then determined that that was essentially the situation presented on appeal and that the licensee began to sign the form provided her, acknowledging her assent to a blood test after the officer explained the matters that confused her on the consent form. *Id.* Thus, we could not determine that ten to fifteen minutes of ques-

tioning concerning the licensee's rights when confused constituted a refusal. *Id.* at 156–57.

However, we also recognized that the officer's testimony presented a different picture of the licensee's behavior and seriousness than that presented by the licensee, and if accepted as credible could have supported a legal determination that the licensee refused to submit to the blood test. *Id.* But that was not the case before this court. *Id.* The case before this court set forth unchallenged findings of fact based upon credible testimony of the licensee. *Id.* Therefore, we affirmed the trial court's order sustaining the licensee's appeal. *Id.*

Based on the findings of the trial court in the instant case, it presents a different picture than *McDonald.* Here, the trial court found in favor of the department and against licensee based on the testimony and the videotape presented at the hearing *de novo.* As we pointed out in *McDonald,* questions of credibility and conflicts of evidence in license suspension cases are for the trial court to resolve. *Ingram.* Therefore, the fact that fifteen minutes elapsed in *McDonald* before a refusal was recorded as opposed to eight minutes in the present case is of no moment. The trial court found herein that licensee's conduct belied his claim that he was confused.[4] The trial court clearly found that licensee was not confused but rather was stalling for time. Pursuant to *Ingram,* we cannot disturb such a finding of the trial court on appeal when it is based on credibility.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 12th day of January, 1999, the order of the Court of Common Pleas of Lehigh County, dated April 23, 1998, at No.98–C–46, is affirmed.

---

**4.** A licensee's overall conduct can demonstrate a refusal. *Department of Transportation v. Ren-* *wick,* 543 Pa. 122, 669 A.2d 934 (1996).