COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Mark Joseph LIPKO.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 8, 1994.

Decided Jan. 27, 1995.

Reargument Denied March 20, 1995.

William A. Kuhar, Jr., Asst. Counsel, Appellate Section, and Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellant.

Edward J. Bilik, for appellee.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT), appeals an order of the Court of Common Pleas of Westmoreland County which sustained Mark Joseph Lipko's appeal of a one-year suspension of his driver's license, imposed pursuant

to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).

On April 14, 1993, Lipko was stopped by Officer Brian Dove of the Mount Pleasant Borough Police Department after Lipko was observed stopping in the middle of an intersection and then backing up until he was behind the traffic signal, which was red. Officer Dove pulled his patrol car alongside the Lipko vehicle and observed that Lipko's face was flushed and that he was sweating. When Officer Dove approached Lipko's vehicle on foot, he detected the odor of marijuana and saw a pipe inside the car, which he suspected was drug paraphernalia. Officer Dove then asked Lipko for the pipe, and while they were talking, he noticed that Lipko's speech was slurred and that there was a strong odor of alcohol on his breath. He asked Lipko to get out of his vehicle, and Lipko stumbled and walked with a staggered gait. Officer Dove searched the vehicle and found a bag containing what he believed was marijuana. Lipko was then asked to perform two field sobriety tests, and he failed both.

Officer Dove placed Lipko under arrest for driving under the influence of alcohol and/or a controlled substance and for possession of marijuana and drug paraphernalia, in violation of Section 13 of The Controlled Substance, Drug, Device and Cosmetic Act.[1] He then advised Lipko of the Implied Consent Law by reading to him, in its entirety, a two-page "Chemical Testing Warnings" form, which provided as follows:

1. Please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of your _____ (Breath, Blood, Urine. Whichever type officer chooses).

3. It is my duty, as a police officer, to inform you that your operating privilege will be suspended for one year if you refuse to submit to this chemical test.

4. I must also inform you that your constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test and that therefore, you do not have a right to consult with an attorney, or anyone else, prior to taking the chemical test or to have an attorney, or anyone else, present while you take the chemical test, nor do you have a right to remain silent when asked to take a chemical test.

1. The constitutional rights you have as a criminal defendant, commonly known as the *Miranda* rights, including the right to speak with a lawyer and the right to remain silent, apply only to criminal prosecutions and do not apply to the chemical testing procedure under Pennsylvania's Implied Consent Law, which is a civil, not a criminal proceeding.

2. You have no right to speak to a lawyer, or anyone else, before taking the chemical test requested by the police officer nor do you have a right to remain silent when asked by the police officer to submit to the chemical test. Unless you agree to submit to the test requested by the police officer your driving privilege will be suspended for one year.

(Commonwealth Exhibit #1; Reproduced Record (R.R.) at 48a–49a.)

After being read the warnings, Lipko indicated to Officer Dove that he understood what he had heard, but requested to speak to an attorney. Officer Dove then requested Lipko to submit to a blood test, and Lipko responded that he did not want to do so because he was afraid of losing his commercial driver's license. After being transported to the police station, Lipko was again requested to submit to the blood test and refused to do so. Officer Dove read the "Chemical Testing Warnings" to Lipko, at least once more, and Lipko continued to respond with a request for counsel.

During the time that the "Chemical Testing Warnings" were being read to Lipko and he was being asked to submit to the test, he was asked on more than one occasion where

1. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–113.

he had obtained the marijuana found in his vehicle. In response to these questions, Lipko requested to speak to an attorney. Although Lipko was never given *Miranda*[2] warnings, he continued to assert his right to counsel when asked about the marijuana, despite the "Chemical Testing Warnings" provided by Officer Dove.

Lipko's refusal to submit to the chemical testing was reported to DOT and, pursuant to an official notice dated June 18, 1993, his operating privilege was suspended for one year. Lipko filed a timely appeal with the Court of Common Pleas of Westmoreland County, and after a *de novo* hearing on September 30, 1993, the trial court sustained Lipko's appeal.

In sustaining the appeal, the trial court concluded that the suspension was inappropriate because Lipko was confused over his *Miranda* rights and not adequately warned that his rights were inapplicable to the chemical test. The trial court wrote as follows:

> The preponderance of the evidence in this case established that the licensee, Mark Lipko, was confused as to whether the request for the chemical test was related to the Driving Under the Influence arrest or to the drug charge. By failing to clarify this at the time the test was requested, the officer did not adequately inform petitioner that his *Miranda* rights were not applicable in a civil proceeding to suspend his license. Our reading of the *O'Connell* decision convinces us that the officer must assure himself that the licensee understands the context of the test and that *Miranda* rights do not apply when the chemical test is part of a civil investigation as opposed to part of a criminal investigation. Without such an adequate warning, a finding of 'knowing and conscious refusal' is impossible.

(Trial court opinion at 3–r R.R. at 58a–59a.) The trial court also made the following relevant statements from the bench:

> I think Mr. Lipko's testimony was very believable ... in that he indicated that he was clearly preoccupied with having been caught with marijuana, that he wanted to speak with a lawyer. And I think that this case is more complex than the cases on point, because it is correct, simultaneously while requesting a chemical analysis of Mr. Lipko's blood, custodial interrogation was taking place by one or both officers.
>
> . . . .
>
> We do have Mr. Lipko's uncontradicted testimony that the ... officer repeatedly interrogated him relative to the source of the marijuana. So I think that the situation itself, the simultaneous custodial interrogation and request for chemical analysis, does in and of itself lead to confusion [as to] what exactly were Mr. Lipko's rights under the circumstances.

(Notes of Testimony at 40–41; R.R. at 45a–46a.)

On appeal to this Court, DOT argues that the trial court's decision was in error because Lipko was adequately warned of the inapplicability of his *Miranda* rights to the chemical testing.

■ It is well settled in this Commonwealth that, because the chemical testing for blood alcohol content is a civil proceeding, there is no right to consult with an attorney before taking the test. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). In *O'Connell*, our Supreme Court recognized the confusion that may arise when a driver is read *Miranda* warnings concerning his right to counsel with regard to the criminal aspect of the DUI charge, and then denied counsel with regard to the civil, or administrative, aspect, which includes the chemical testing. Accordingly, to ensure that an arrestee makes a knowing and conscious decision to submit to chemical testing, *O'Connell* requires that when an arrestee requests to speak with an attorney, whether or not he exhibits confusion, *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992), whether or not the licensee has been advised of his rights under *Miranda*, the police must tell him that his right to counsel is not applicable to the test. *Department of Transportation v. McCann*, 533 Pa. 456, 626 A.2d 92 (1993). In the case now before us, because

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Lipko requested to speak to counsel, *O'Connell* applies.

The Supreme Court has recently further interpreted *O'Connell* in *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994), to require *only* the following information in an *O'Connell* warning: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; and second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing.[3] The warnings given to Lipko in this case would, of course, satisfy, as a matter of law, the *Ingram* requirements.

■ The Supreme Court went further in *Ingram*, however, and explained that when resolving an *O'Connell* issue, that the question of whether a licensee is confused or not is a subjective test to be determined by the trial court, and an appellate court must recognize that it is the trial court's province to make credibility determinations. It is no longer a question of the legal adequacy of the warning which is given, because even if the warning is adequate as a matter of law, if the motorist is still confused and the trial court so finds, then the appellate courts must give deference to the fact finder.

The facts in *Ingram* are particularly instructive. Ingram was arrested for driving under the influence of alcohol or a controlled substance and was, thereafter, asked by the police to submit to chemical testing. After Ingram demanded to speak with his attorney or his parents, the police read the Licensee an *O'Connell* warning explaining that his right to confer with an attorney did not apply to the test and that his driving privilege would be suspended for one year if he refused the test. Ingram refused the test and DOT imposed a one-year suspension. He filed a statutory appeal of his suspension which the trial court sustained. The trial court found that Ingram did not understand his rights and that he was confused; his confusion was found to be caused by the specific language of the warning, the lack of

an opportunity to read the document containing the warning, and distractions around him while the warnings were read. DOT appealed the trial court's order to this Court, which affirmed on the ground that the warning read to Ingram was inadequate, as a matter of law, under *O'Connell.* DOT, then, appealed this Court's decision to the Supreme Court. Contrary to this Court's reasoning, the Supreme Court held that the *O'Connell* warning provided by the police to Ingram *was* sufficient as a matter of law. Nevertheless, the Supreme Court affirmed this Court's decision and, thereby, upheld the trial court's order overturning Ingram's license suspension. It was obvious that the Supreme Court reached the result it did because the trial court found as fact that "the circumstances surrounding Ingram's being advised of his rights were confusing, and that he was unable to understand the warnings being read to him. . . ." *Ingram* at ——, 648 A.2d at 295.

In light of the above, under *Ingram*, even if the police provide a sufficient *O'Connell* warning, a license suspension imposed on a licensee for refusing to submit to chemical testing must be reversed, if the fact finder determines that the circumstances surrounding the police's request for chemical testing are confusing and prevent a licensee from understanding the warning.

■ In the present case, after informing Lipko that his driver's license would be suspended for one year if he refused the chemical test, the police several times provided Lipko, with the following warnings: "[t]he **constitutional rights you have as a criminal defendant, commonly known as the Miranda rights . . . do not apply to the chemical testing procedure under Pennsylvania's Implied Consent Law, which is a civil, not a criminal proceeding.**" (Emphasis added.) The preceding warning is clearly in accord with the requirements our Supreme Court outlined in *Ingram;* therefore, we conclude that the warnings the police provided

---

**3.** However, "this is by no means a mantra that the police must recite like automatons." *Ingram,*

538 Pa. at ——, 648 A.2d at 295.

to Lipko complied with the requirements of *O'Connell.*

■ However, regardless of our conclusion that the warnings provided to Lipko were adequate to discharge the police's responsibility under *O'Connell,* we are compelled under *Ingram* to affirm the trial court's decision to sustain Lipko's appeal, because the trial court found as fact that Lipko was confused over the application of his constitutional rights to chemical testing. The trial court based that finding on the fact that Lipko was asked by the police to submit to chemical testing at the same time he was being interrogated concerning the marijuana charge; the trial court found that the juxtaposition of those events was, in itself, confusing. Further, the trial court accepted as credible Lipko's testimony that he was confused. Therefore, following the Supreme Court's decision in *Ingram,* we will defer to the trial court's finding that Lipko was confused over the applicability his *Miranda* rights to the blood test and affirm the trial court's order.

Affirmed.

### ORDER

NOW, January 27, 1995, the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is hereby affirmed.

KELLEY, Judge, concurring.

I join with the majority opinion.

I concur in the result for the following additional reasons. I believe this particular case involves a unique set of circumstances which resulted in Lipko's confusion as a matter of law regarding his decision to refuse to submit to chemical testing under the implied consent law.

Lipko was arrested simultaneously for possession of marijuana and drug paraphernalia, in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and for driving under the influence of alcohol and/or a controlled substance in violation of the Vehicle Code.

During the time that the police officer was requesting that Lipko submit to chemical testing in accordance with the implied consent law, he was being interrogated on where he had obtained the marijuana found in his vehicle. In response to the questions regarding the marijuana, Lipko asserted his right to counsel.

*Miranda* requires that an arrestee must be warned before questioning that he has the right to remain silent, that anything he says can be used against him in court, and that he has the right to the presence of an attorney and to have an attorney appointed before questioning if he cannot afford one. 384 U.S. 436. These warnings must be given to all individuals prior to custodial interrogation, whether the offense investigated is a felony or a misdemeanor traffic offense. *McCarty v. Herman,* 716 F.2d 361 (4th Circ.1983), aff'd, 468 U.S. 420.

It is undisputed in the present case that Lipko was not given *Miranda* rights before he was interrogated by the police regarding the marijuana. Moreover, this interrogation was conducted at the same time Lipko was being asked to submit to chemical testing under the implied consent law.

I believe the hybrid situation of a simultaneous arrest of separate drug possession and driving under the influence requires *Miranda* warning and distinctions of the application of *Miranda* applying and why it applies to the drug charge and not the chemical testing driving under the D.U.I. charge.

Accordingly, I believe that Lipko's confusion over his *Miranda* rights, the intervening custodial interrogation and the denial of his right to counsel enhanced Lipko's confusion as a matter of law with regard to this making a knowing and conscious refusal to submit to chemical testing.