Joseph FRENGEL

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 8, 1995.

Decided Oct. 24, 1995.

Timothy P. Wile, Assistant Counsel In-Charge Appellate Section, for appellant.

David H. Acker, for appellee.

Before McGINLEY and KELLEY, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Lawrence County (trial court) which rescinded the one-year suspension of Joseph Frengel's (Frengel) operating privilege which was imposed as a result of his failure to submit to a chemical test pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1]

---

1. Section 1547(b)(1) provides:
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving

under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not

By official notice dated September 21, 1994, DOT informed Frengel that his operating privilege was suspended for one year as a result of his reported refusal to submit to chemical testing on September 4, 1994. Frengel appealed his suspension to the trial court.

At a *de novo* hearing DOT presented the testimony of Pennsylvania State Police Trooper James Orloff (Trooper Orloff). Trooper Orloff testified that he placed Frengel under arrest for driving under the influence (DUI)[2] "[a]fter observing his demeanor and his inadequate performance of the field sobriety tests." Notes of Testimony, December 8, 1994, (N.T.) at 3; Reproduced Record (R.R.) at 12a. Trooper Orloff then handcuffed Frengel and transported him to St. Francis Hospital for a blood test. Trooper Orloff testified that while en route to the hospital he advised Frengel "that his refusal to submit to this test would result in a one-year suspension of his driving privilege." N.T. at 4; R.R. at 13a. Upon arrival at the hospital, and in the presence of the lab technician, Trooper Orloff again advised Frengel that he was under arrest for DUI and that his license would be suspended if he refused to submit to a chemical test of his blood. At this point Frengel asked to speak to an attorney. Trooper Orloff testified that he "told [Frengel] that at this particular time he was not entitled to any counsel, and that after submitting to a test, he could then contact his attorney." N.T. at 5; R.R. 14a. Frengel again asked to consult an attorney. Trooper Orloff testified that he repeatedly advised Frengel that he had no right to consult an attorney and that his continued refusal to submit to the blood test would result in a suspension of his license. Trooper Orloff testified that "I eventually told him that I considered his refusal to submit to be just that, a refusal, and that that particular portion of the incident was closed and he was now free to contact his attorney." N.T. at 6–7; R.R. at 15a–16a. After making a phone call to his sister Frengel informed Trooper Orloff that he would submit to the test. Trooper Orloff testified that he advised Frengel "that the time for taking the test had passed and I was not required to allow him to submit to a test now." N.T. at 8; R.R. at 17a.

Frengel testified that after he was arrested, and while en route to the hospital, Trooper Orloff informed him of his constitutional rights and specifically of his right to counsel. Upon arrival at the hospital Frengel testified that Trooper Orloff notified him that he did not have a right to counsel at that time. Frengel testified that "I said I don't understand what you're saying, and [Trooper Orloff] looked at me and he said that's it, as far as I'm concerned, you're refusing to take the test, and I said no, I'm not refusing, I don't understand." N.T. at 11; R.R. at 20a. According to Frengel's testimony, after he phoned his sister he asked to take the blood test three or four times. Frengel stated that he was confused by the conflicting instructions about his right to counsel, and that he "couldn't understand how 15 minutes ago I was entitled to an attorney and now I was not." N.T. at 12; R.R. at 21a.

On re-direct examination Trooper Orloff denied giving Frengel *Miranda*[3] warnings or notifying him of his right to counsel while en route to the hospital. Trooper Orloff testified:

> I do not *Mirandize* anyone until after the blood test, at which point we are requested to make a small interview for our report, were you in an accident, were you injured, and so forth, and at that time, before asking those questions, I *Mirandize*, but never at any time before that point.

N.T. at 14–15; R.R. at 23a–24a.

On December 8, 1994, the trial court sustained Frengel's appeal and rescinded the one-year suspension finding that "the factual situation [did] not indicate a willful and deliberate refusal to take the test." Order of the trial court, December 8, 1994 (trial court order).

be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

2. Section 3731 of the Code, 75 Pa.C.S. § 3731.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ On appeal to this Court DOT raises the following issue. Whether the trial court erred by determining that no refusal occurred. Our scope of review in a license suspension case is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determination demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Tarnopolski*, 533 Pa. 549, 626 A.2d 138 (1993).

■ It is well settled that anything short of an unqualified, unequivocal assent to the request to submit to chemical testing is a refusal which results in a one-year suspension of operating privileges. *Colgan v. Department of Transportation, Bureau of Traffic Safety*, 127 Pa.Cmwlth. 479, 561 A.2d 1341 (1989). It is also well settled that requests to submit to chemical testing are civil proceedings and that there is no right to consult with an attorney before taking the test. *Department of Transportation, Bureau of Driver Licensing v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). In *O'Connell*, our Supreme Court recognized that untrained arrestees who do not know the difference between civil and criminal proceedings can be confused about their rights when requested to submit to a chemical test. Thus, as the Honorable Joseph T. Doyle recently noted in *Department of Transportation, Bureau of Driver Licensing v. Lipko*, 654 A.2d 227 (Pa. Cmwlth.1995):

4. *Ingram* and *Frain* are two separate license suspension cases which were consolidated by the Supreme Court and decided in a single opinion.

5. In *Department of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa.Cmwlth. 82, 606 A.2d 1270 (1992), *appeal denied*, 531 Pa. 657, 613 A.2d 561 (1992), this Court held that an *O'Connell* warning must include the following information: the constitutional rights that protect a criminal defendant do not apply to chemical testing; a motorist has no right to consult with an attorney before taking the test; and *Miranda* rights do not apply because chemical testing is a civil proceeding. In *Department of Transportation, Bureau of Driver Licensing v. McCann*, 533 Pa. 456, 626 A.2d 92 (1993), the

To ensure that an arrestee makes a knowing and conscious decision to submit to chemical testing, O'Connell requires that when an arrestee requests to speak with an attorney, whether or not he exhibits confusion ... [and] whether or not the licensee has been advised of his rights under *Miranda*, the police must tell him that his right to counsel is not applicable to the test.

*Id.*, 654 A.2d at 229. (Citations omitted). Because Frengel requested to consult with an attorney, *O'Connell* warnings are applicable here. Accordingly, we must determine whether Trooper Orloff's warnings satisfied *O'Connell*.

In *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994) and *Department of Transportation, Bureau of Driver Licensing v. Frain*, 538 Pa. 236, 648 A.2d 285 (1994),[4] the Supreme Court interpreted its decision in *O'Connell* and held "that a proper *O'Connell* warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing." *Ingram*, 538 Pa. at 256, 648 A.2d at 294–95.[5] In *Cook*, Judge Doyle noted:

[The Supreme Court's] holding was not a 'mantra' that the police are required to mechanically repeat, but merely describes the subject matter the police must cover in their warning. In addition, the court expressly held that DOT's DL–26 form satis-

Supreme Court upheld our decision in *Sorg* and reasoned:

Inasmuch as appellant requested legal consultation and was not advised by police that his right to counsel under *Miranda* did not extend to breathalyzer test procedures, it cannot be said that his refusal ... was a knowing and conscious one. The procedures used by the police, whereby, without further explanation, appellant was simply told that he could not contact his attorney, did not satisfy the requirement of *O'Connell*....

In the recent decision of *Cook v. Department of Transportation, Bureau of Driver Licensing*, 664 A.2d 1098 (Pa.Cmwlth.1995), our Judge Doyle concluded that *McCann* and *Sorg* were overruled by the Supreme Court *sub silencio* in *Ingram* and *Frain*. *Cook*, Pa.Cmwlth., 664 A.2d 1098.

fies *O'Connell;* that form reads, in pertinent part, as follows:

> You do not have the right to consult with an attorney, or anyone else, prior to taking the chemical test. If you fail to provide the requested sample, by not following instructions or by continuing to request to speak with someone, it will be considered a refusal. *Ingram,* 538 Pa. at 251, 648 A.2d at 292.

*Cook,* Pa.Cmwlth., 664 A.2d 1098.

■ Here, Trooper Orloff advised Frengel of the Implied Consent Warnings. Further, Trooper Orloff advised Frengel that he did not have a right to talk to counsel prior to taking the chemical test. Accordingly, we conclude that the warnings provided to Frengel were sufficient *O'Connell* warnings under *Ingram, Frain* and *Department of Transportation, Bureau of Driver Licensing v. Gomo,* 157 Pa.Cmwlth. 142, 629 A.2d 217 (1993), *reversed,* 538 Pa. 475, 649 A.2d 431 (1994) (police warning to licensee that "he was not entitled to an attorney before taking the test" held to be sufficient under *Ingram* and *Frain*).

The Supreme Court went further in *Ingram,* however, and determined that even though the warnings read were sufficient as a matter of law, the trial court correctly overturned the licensee's suspension. In *Lipko,* we applied *Ingram* and determined that the Supreme Court reached its decision based on the trial court's finding that the licensee was confused and unable to understand the warnings read to him, stating:

> In light of the above, under Ingram, even if the police provide a sufficient O'Connell warning, a license suspension imposed on a licensee for refusing to submit to chemical testing must be reversed, if the fact finder determines that the circumstances surrounding the police's request for chemical testing are confusing and prevent a licensee from understanding the warning.

*Lipko,* 654 A.2d at 230.

■ In the present matter, the trial court sustained Frengel's appeal concluding "that the factual situation ... does not indicate a willful and deliberate refusal to take the test." Trial court order. In making this

determination the trial court stated that "police officers have to recognize that there might be some confusion in [the licensee's] mind." N.T. at 26; R.R. at 35a. Although the trial court did not make a specific finding that Frengel was confused, we recognize that the trial court issued its order before our decision in *Lipko* was filed. Based upon the trial court's statements and its ultimate conclusion it is inescapable that the trial court was convinced that Frengel was confused. Accordingly, pursuant to *Ingram* and *Lipko* we are compelled to affirm the trial court's decision sustaining Frengel's appeal.

### ORDER

AND NOW, to wit, this 24th day of October, 1995, the order of the Court of Common Pleas of Lawrence County at No. 70314 of 1994, dated December 8, 1994, is affirmed.