IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane Boerner,                     :
             Appellant           :
                         :    No. 2529 C.D. 2015
               v.                :
                         :    Submitted: April 29, 2016
Commonwealth of Pennsylvania,  :
Department of Transportation,     :
Bureau of Driver Licensing       :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: September 15, 2016

Diane Boerner (Licensee) appeals from the November 4, 2015 order of the Court of Common Pleas of Bucks County (trial court), which denied her statutory appeal from the twelve-month suspension of her operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to section 1547(b)(1)(i) of the Vehicle Code (Code), 75 Pa.C.S. §1547(b)(1)(i).[1]

---

[1] Section 1547(a) of the Code, commonly known as the Implied Consent Law, provides that:

> Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood . . . if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle. . . .

**(Footnote continued on next page…)**

The underlying facts of this case are not in dispute. On November 6, 2014, Officer Jeffrey Stich of the Doylestown Township Police Department stopped Licensee and placed her under arrest on suspicion of driving under the influence (DUI). Officer Stich transported Licensee in his patrol car to the Doylestown Hospital, where he asked her to submit to a blood test and she refused. Officer Stich proceeded to read Licensee the Implied Consent warnings from Form DL-26. Officer Stich again asked Licensee if she would submit to a blood test, to which Licensee responded by requesting her glasses, which she had left in her car that was towed to a different location, and asking to read the form for herself. Officer Stich insisted that Licensee simply answer yes or no to the request for a blood test, but she again asked to read the form herself. Officer Stich advised Licensee that he was marking the form as a refusal. Licensee stated that she was not refusing and declined to sign the form indicating as such. (Trial court op. at 1-2.)

By notice dated November 24, 2014, DOT advised Licensee that her operating privilege would be suspended for a period of one year, effective December 29, 2014, pursuant to section 1547(b)(1)(i) of the Code. Licensee filed a timely appeal, and on October 14, 2015, the trial court held a *de novo* hearing. At this hearing, DOT introduced a certified packet of documents which included, *inter alia*, the notice of suspension and a copy of the DL-26 form that Officer Stich read to Licensee. Licensee did not object to the admission of these documents. Licensee thereafter stipulated that Officer Stich had reasonable grounds to stop her vehicle and

**(continued…)**

75 Pa.C.S. §1547(a). Section 1547(b)(1)(i) provides that if any person placed under arrest for driving while under the influence is requested to submit to a chemical test, and refuses to do so, the Department shall suspend the person's operating privilege for a period of twelve months.

2

request that she submit to chemical testing. Licensee noted that she was only disputing whether this matter involved a proper refusal on her part.

DOT then called Officer Stich to the stand. Officer Stich testified that he was working the midnight shift from 7:00 p.m. to 7:00 a.m. on November 6, 2014, and was on patrol in the area of Easton Road and Edison Furlong when he first observed Licensee's vehicle, a white Saab, around 7:50 p.m. stopped past a traffic light in the northbound lane of Easton Road. He stated that the vehicle began to enter the intersection prior to the light turning green. He then began to follow Licensee's vehicle in the left lane and observed it merging into his lane without a turn signal and crossing back and forth between the lanes, almost striking his vehicle. He subsequently initiated a traffic stop. (Notes of Testimony (N.T.) at 5-7.)

As he walked up to the vehicle, Officer Stich observed an open wine bottle on the floor of the backseat. When Licensee rolled down her window, he detected a strong odor of an alcoholic beverage emanating from inside the vehicle. He also described Licensee's eyes as appearing glassy, her speech being slurred, and her being slow in retrieving her documents. Officer Stich noted that Licensee provided him with expired registration and insurance cards and when he asked for current documentation, Licensee simply placed a bracelet on her wrist. He then called for the assistance of another officer, and after that officer arrived, asked Licensee to exit her vehicle. He stated that Licensee used the vehicle for support as she exited and refused to perform any requested field sobriety tests or a breath test. Upon these refusals, and believing that Licensee was incapable of safe operation of a motor vehicle, Officer Stich placed her under arrest for suspicion of DUI. (N.T. at 7-8.)

Officer Stich placed Licensee in the rear of his vehicle and advised her that he was transporting her to the Doylestown Hospital for a blood test. Upon arrival

3

at the hospital, he escorted Licensee to the blood draw room and asked her to submit to a blood test, but she refused. He then read Licensee the warnings from the DL-26 form, again requested that she submit to a blood test, and she again refused. Officer Stich identified the DL-26 form previously submitted by DOT as the form he read to Licensee. He testified that he read each of the four paragraphs verbatim to Licensee. He denied noticing any obvious physical reason why Licensee would not be able to take the test or that Licensee ever informed him of any medical condition which would prevent the same. (N.T. at 9-11.)

On cross-examination, Officer Stich testified that he asked Licensee on the way to the hospital if she would agree to a blood test, and again after arrival, but she refused both times. After the second refusal, he stated that he read Licensee the warnings from the DL-26 form. Officer Stich could not recall if Licensee interrupted his reading of this form to ask a question, but did recall asking her to let him finish reading and then she could ask questions. Likewise, he did not recall a second interruption by Licensee or her requesting to read the form after he finished. He did recall her asking for her glasses at one point but he noted that they were in her car which was already towed. He also recalled advising her that she needed to decide at that moment whether she would agree to the blood test. Officer Stich acknowledged that he did recall Licensee stating that she would not submit to a test until she was able to read the form. However, he considered that response a refusal. (N.T. at 11-17.)

Counsel for Licensee proceeded to play audio and video of the stop. Officer Stich agreed that it was his voice on the tape. He agreed that Licensee twice interrupted his reading of the DL-26 form to attempt to ask questions and that he kept on reading. He also agreed that Licensee asked to read the form herself after he was finished, to which he responded that she needed to make a decision right now. While

4

the tape reveals Licensee asking for her glasses, Officer Stich stated that he did not record a refusal because of that request; instead, he recorded a refusal because she refused to answer yes or no to a blood test after he read her the form. He acknowledged that Licensee denied on the tape that she was refusing the test. (N.T. at 20-26.)

On re-direct examination, Officer Stich reiterated that he read the DL-26 form to Licensee and that Licensee responded that she would not submit to testing without reading the form herself. He clarified that at no point did she ever agree to take the test. (N.T. at 27-28.) On re-cross examination, he conceded that Licensee never stated on the tape that she was not going to take the test, just that she needed her glasses to read the form. (N.T. at 29.)

Licensee thereafter testified on her own behalf. She stated that she attempted to ask questions of Officer Stich because the form he was reading was confusing, especially with respect to prior convictions, suspensions, and purported jail time. After Officer Stich was done reading, she indicated that she asked for her glasses to read the form herself because she did not completely understand it. She described the form as containing a lot of material and being confusing as to the consequences of what she was being asked to do. Licensee testified that Officer Stich simply marked her as a refusal without giving her the opportunity to submit to the testing. Licensee noted that she needs her glasses to read. Finally, Licensee denied ever specifically refusing to take the test. (N.T. at 37-43.)

On cross-examination, Licensee admitted that she never advised Officer Stich that she was confused about the form, only that she wanted to read it herself. After he asked her to make a decision, Licensee conceded that she requested her glasses. Licensee noted that he never asked her if she was confused. Licensee stated

that she did tell Officer Stich that she needed to read the form because she did not understand it. (N.T. at 44-47.)

The trial court took the matter under advisement. By order dated November 4, 2015, the trial court denied Licensee's appeal and directed that her suspension be reinstated. Licensee filed a motion for reconsideration, but the same was denied. Licensee subsequently filed a notice of appeal with the trial court.

The trial court subsequently issued an opinion concluding that Licensee "did not unequivocally consent to the test on the night in question." (Trial court op. at 3.) The trial court found that in requesting her glasses to read the DL-26 form after it was read to her by Officer Stich, Licensee was not exhibiting confusion. *Id.* In this regard, the trial court noted that Licensee acknowledged that she never specifically informed Officer Stich that she was confused. In addition, the trial court rejected Licensee's testimony that she informed Officer Stich that she did not understand the warnings. *Id.* The trial court described Licensee's actions as being disingenuous and an attempt to delay the testing. *Id.* While the trial court noted that Officer Stich could have acceded to her request to read the DL-26 form, it stated that he was not required to so. *Id.*

On appeal,[2] Licensee argues that the trial court erred in denying her appeal when she was never provided with a meaningful opportunity to submit to chemical testing and she never intentionally and knowingly refused to submit to the same. We disagree.

---

[2] Our scope of review is limited to determining whether the findings of fact are supported by competent evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Piasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa. Cmwlth. 2010).

In order to sustain a suspension of operating privileges under section 1547(b)(1) of the Code, DOT must establish that the licensee:

> (1) was arrested by a police officer who had reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that refusal would result in a license suspension.

*Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011). If the Department satisfies its burden of proving these elements, the suspension must be affirmed unless the licensee shows that she was physically unable to take the test or that her refusal to submit to chemical testing was not knowing and conscious. *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 348-49 (Pa. Cmwlth. 2011). Whether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law fully reviewable by this Court. *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 298 (Pa. Cmwlth. 2013).

In the present case, Licensee stipulated that Officer Stich had reasonable grounds to stop her vehicle and request that she submit to chemical testing. Additionally, there is no dispute that Officer Stich requested that Licensee submit to chemical testing. Licensee argues, however, that DOT failed to meet the remaining two elements because she did not have a meaningful opportunity to agree to the testing and she could not have made a knowing and conscious decision to refuse the same. In this regard, Licensee does not deny that Officer Stich read the Implied Consent warnings to her verbatim from the DL-26 form or that he asked her again to submit to chemical testing after he read the same. Licensee acknowledges that, instead of simply answering yes or no to that question, she requested her glasses in order to read the form herself.

7

Our Courts have consistently held that "anything substantially less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so. *Department of Transportation v. Renwick*, 669 A.2d 934, 938 (Pa. 1996); *McKenna*, 72 A.3d at 298; *Lanthier*, 22 A.3d at 348; *Miele v. Commonwealth*, 461 A.2d 359, 360 (Pa. Cmwlth. 1983). Moreover, this Court has previously held that "[a]n officer's sole duty is to <u>inform</u> motorists of the implied consent warnings; once they [sic] have done so, they [sic] have satisfied their [sic] obligation." *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 35 (Pa. Cmwlth. 2005) (emphasis added). Additionally, in *Martinovic*, we stated that "[o]fficers do not have an obligation to make sure that licensees understand the warnings or the consequences of refusing to submit to chemical testing." *Id.* Indeed, in *McKenna*, we held that a police officer had no duty to answer the licensee's questions to licensee's satisfaction or spend time ensuring that the licensee fully comprehended the DL-26 form. *Id.* at 301.

Licensee correctly notes that we have previously stated that "even if the police provide a sufficient *O'Connell* warning,[3] a license suspension imposed on a licensee for refusing to submit to chemical testing must be reversed, if the fact finder determines that the circumstances surrounding the police's request for chemical testing are confusing and prevent a licensee from understanding the warning." *Frengel v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 785, 788 (Pa. Cmwlth. 1995) (citing *Department of Transportation, Bureau of Driver*

---

[3] The phrase "O'Connell warning" derives from our Pennsylvania Supreme Court's decision in *Commonwealth v. O'Connell*, 555 A.2d 873 (Pa. 1989), wherein the court held that when a motorist is requested to submit to chemical testing under the provision of the Implied Consent Law, 75 Pa.C.S. §1547, the law enforcement officer making the request has a duty to explain to the motorist that the rights provided by the United States Supreme Court decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), are inapplicable to such a request.

*Licensing v. Lipko*, 654 A.2d 227, 230 (Pa. Cmwlth. 1995)). However, unlike *Frengel* and *Lipko,* wherein we were constrained to affirm the common pleas courts' orders sustaining the licensees' appeals in light of their credible testimony regarding confusion over the warnings, the trial court in this case found that Licensee never informed Officer Stich that she was confused about the warnings. Further, the trial court rejected Licensee's testimony that she had informed Officer Stich that she did not understand the same. To the contrary, the trial court described Licensee's actions as disingenuous and intended to delay the testing. Thus, neither *Frengel* nor *Lipko* support Licensee's position.

Because Licensee received the warning she was entitled to under the Implied Consent Law, never assented to chemical testing, and failed to establish that her refusal was neither knowing nor conscious, the trial court did not err in denying Licensee's appeal from the one-year suspension of her operating privilege under section 1547(b)(1)(i) of the Code.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane Boerner, :
            Appellant :
  : No. 2529 C.D. 2015
         v. :
  :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing :

## *ORDER*

AND NOW, this 15th day of September, 2016, the order of the Court of Common Pleas of Bucks County, dated November 4, 2015, is hereby affirmed.


_____
PATRICIA A. McCULLOUGH, Judge