# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher C. Bartolucci | : | |
| | : | |
| v. | : | No. 74 C.D. 2017 |
| | : | |
| Commonwealth of Pennsylvania, | : | Submitted: September 22, 2017 |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: December 21, 2017**

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from the order of the Cumberland County Court of Common Pleas (trial court) that sustained the statutory appeal of Christopher C. Bartolucci (Licensee) pursuant to Section 1547(b) of the Vehicle Code, 75 Pa. C.S. §1547(b), commonly known as the Implied Consent Law.[1]   The Department suspended Licensee's operating privilege for one year for his refusal to submit to a blood test. The Department argues the trial court erred in determining that Licensee met his burden of proving that his confusion rendered his refusal unknowing.   It asserts Licensee was required to submit medical evidence to establish that his confusion did not relate to his intoxication.   Upon review, we reverse.

---

[1] Section 1547(b)(1) requires any person placed under arrest for driving under the influence (DUI) "to submit to chemical testing…[and if that person] refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person… for a period of 12 months."  75 Pa. C.S. §1547(b)(1)(i).

# I. Background

Officer Chad Tate of the Camp Hill Borough Police Department (Officer) stopped Licensee for suspicion of driving under the influence (DUI) in violation of 75 Pa. C.S. §3802. Following the traffic stop, Officer requested a preliminary breath sample. Licensee complied. The sample indicated a blood alcohol content of 0.096%. Officer read Licensee the warnings on the Form DL-26 (Warning), which states, in pertinent part:

> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. <u>If you request to speak with an attorney or anyone else after being provided these warnings</u> or you remain silent when asked to submit to chemical testing, <u>you will have refused the test.</u>

Reproduced Record (R.R.) at 47a (emphasis added). Officer then asked Licensee to provide a blood test. After inquiring about speaking to an attorney, and repeating that he already provided a breath sample to Officer, Licensee refused.

Officer advised the Department of Licensee's refusal. The Department then sent a notice of suspension to Licensee. The notice advised Licensee his operating privilege was suspended for one year. Licensee appealed to the trial court.

The trial court held a hearing.[2] The Department presented the testimony of Officer and submitted an audio-visual recording of Officer providing the Warning to Licensee at the DUI booking center (Video). Licensee testified on his own behalf. He did not present any other witnesses or submit any medical evidence.

---

[2] During the hearing, Licensee stipulated that: Officer arrested Licensee based on reasonable grounds that he was DUI; Officer asked Licensee to submit to blood testing; and, Officer warned Licensee of the consequences of refusal. Tr. Ct., Slip Op., 3/1/17, at 1.

2

Officer testified that Licensee did not complain of any current medical conditions, noting only that he had surgeries in the past. R.R. at 20a. At the booking center, after Officer read the Warning verbatim, he provided it to Licensee for his signature. Licensee then repeatedly asked to speak to an attorney. Officer acknowledged he did not explain why Licensee could not speak to an attorney. R.R. at 26a. When Officer again asked if Licensee was going to perform the blood test, Licensee responded that he had already "blown for you" with the breath test. R.R. at 22a. Officer believed "[Licensee] was stalling." R.R. at 29a. Because he "deemed [Licensee's conduct] a refusal," id. at 20a, Officer left the booking center. He clarified he deemed it a refusal "based on [Licensee's] request for an attorney." Id.

Licensee testified that he cooperated with Officer, answering all of his questions. Licensee explained he did not realize he was charged with refusing the blood test until he heard the charges. R.R. at 33a. At that time, Licensee agreed to give a blood sample, and was advised it was too late. Id. at 34a. He testified he was unable to read the Warning himself because he did not have his reading glasses. R.R. at 35a. He was confused about being asked to provide a blood test when he already submitted to the breathalyzer (I already "blew for you."). R.R. at 34a. He did not understand that his refusal of a blood test would result in higher penalties.

Ultimately, the trial court issued an order sustaining Licensee's appeal. The Department filed a motion for reconsideration. The trial court issued a rule to show cause why the motion should not be granted, returnable within 10 days. Although the Department filed a response, Licensee did not answer within the 30-day appeal period. The Department appealed the trial court's order to this Court.

In its Rule 1925(a) opinion, the trial court determined the Department "satisfied its burden and demonstrated that [Licensee] did in fact refuse to submit to chemical testing." Tr. Ct., Slip Op., 3/1/17, at 5. However, as to Licensee's burden, it found "[Licensee's] refusal was not knowing or conscious." Id. The trial court found Licensee was confused based on its review of the Video, and Licensee's testimony as to his confusion, which it credited. From its observation of Licensee, the trial court found, "he genuinely appeared to be trying to understand why he was being asked to provide a blood test when he had already provided a breath sample." Id. at 6. It rejected the Department's legal argument that Licensee's confusion cannot excuse a valid refusal.

## II. Discussion

On appeal,[3] the Department argues the trial court erred in not requiring Licensee to present medical testimony regarding the knowing or conscious nature of his refusal. It asserts there is insufficient evidence for the trial court's determination that Licensee was incapable of providing a knowing and conscious refusal. Further, the Department contends the trial court erred in concluding Licensee's observable confusion made his refusal unknowing.

## A. Legal Standards

In order to suspend a licensee's operating privilege under Section 1547(b) of the Vehicle Code, the Department must demonstrate that:

---

[3] Our review is limited to determining whether the trial court committed an error of law or abused its discretion and whether necessary findings of fact were supported by substantial evidence. Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 946 A.2d 167 (Pa. Cmwlth. 2008).

> (1) Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had 'reasonable grounds to believe' that Licensee was operating or was in actual physical control of the movement of the vehicle while in violation of Section 3802 (i.e., while [DUI]); (2) Licensee was asked to submit to a chemical test; (3) Licensee refused to do so; and[,] (4) Licensee was specifically warned that a refusal would result in the suspension of his operating privileges.

Martinovic v. Dep't of Transp., Bureau of Driver Licensing, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Once the Department satisfies its burden of proof, the burden shifts to the licensee to prove he was physically incapable of performing the chemical test or he was incapable of making a knowing and conscious refusal. Dep't of Transp., Bureau of Driver Licensing v. Ingram, 648 A.2d 285 (Pa. 1994).

Once an officer provides the warnings to a licensee, he has done all that is legally required. Dep't of Transp., Bureau of Driver Licensing v. Scott, 684 A.2d 539 (Pa. 1996). Other than reading the warnings, an officer need only provide a licensee with a meaningful opportunity to comply with the Implied Consent Law. Sitoski v. Dep't of Transp., Bureau of Driver Licensing, 11 A.3d 12 (Pa. Cmwlth. 2010). An officer has no duty to answer a licensee's questions. McKenna v. Dep't of Transp., Bureau of Driver Licensing, 72 A.3d 294 (Pa. Cmwlth. 2013). "Officers do not have an obligation to make sure that licensees understand the warnings or the consequences of refus[al]." Martinovic, 881 A.2d at 35. "An officer [also] has no duty to make sure the licensee understands the warnings regarding the inapplicability of [his] Miranda[4] rights against self-incrimination." Boseman v. Dep't of Transp., Bureau of Driver Licensing, 157 A.3d 10, 15-16 (Pa. Cmwlth. 2017), appeal denied, (Pa., No. 210 MAL 2017, filed August 22, 2017).

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

5

Anything less than an unqualified consent to submit to chemical testing constitutes a refusal. Gregro v. Dep't of Transp., Bureau of Driver Licensing, 987 A.2d 1264 (Pa. Cmwlth. 2010). Indeed, repeated requests to speak with an attorney constitute a refusal. Hirsch v. Dep't of Transp., Bureau of Driver Licensing, 702 A.2d 375 (Pa. Cmwlth. 1997). Repeated questioning may also be deemed a refusal by conduct. Keenan v. Dep't of Transp., Bureau of Driver Licensing, 657 A.2d 134 (Pa. Cmwlth. 1995).

The issue of whether a licensee's refusal was knowing and conscious is a question of fact. Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989). However, whether there is substantial, competent evidence to support the trial court's factual determination is a question of law subject to our plenary review. Dailey v. Dep't of Transp., Bureau of Driver Licensing, 722 A.2d 772 (Pa. Cmwlth. 1999). Further, whether a licensee's conduct constitutes a refusal to submit to chemical testing also presents a question of law. McKenna.

Here, the trial court determined the Department satisfied its *prima facie* burden of proof. The parties stipulated to the first, second and fourth factors. As to the third factor, the trial court held, "we are constrained to agree with [the Department] that it satisfied its burden and demonstrated that [Licensee] did in fact refuse to submit to chemical testing." Tr. Ct., Slip Op., at 5. Thus, the burden shifted to Licensee to prove his refusal to submit to a blood test was not knowing and conscious.

The trial court concluded Licensee met his burden because he was confused. It based its finding of confusion on Licensee's testimony and the Video.

6

## B. Evidence of Incapacity

The Department argues the trial court erred as a matter of law when it concluded Licensee satisfied his burden of proving that he was incapable of making a knowing and conscious decision to refuse chemical testing based on his confusion. It asserts Licensee must submit medical evidence to support his alleged incapacity. Absent medical evidence, the Department contends the trial court's finding as to Licensee's confusion was not supported by substantial, competent evidence.

### 1. Competent Evidence

A driver's self-serving testimony that he was incapable of providing a knowing and conscious consent to or refusal of a chemical test is not sufficient to meet his burden of proving incapacity. Dep't of Transp., Bureau of Traffic Safety v. Dauer, 416 A.2d 113, 115 (Pa. Cmwlth. 1980). Expert medical testimony, although not a *per se* requirement, is generally required in order to validate his testimony. Dep't of Transp., Bureau of Driver Licensing v. Garlan, 550 A.2d 873 (Pa. Cmwlth. 1988), appeal denied, 563 A.2d 499 (Pa. 1989).

This Court consistently holds a licensee's "incapacity defense must be supported by competent medical evidence [when] he suffered no obvious disability." Dep't of Transp., Bureau of Traffic Safety v. Cassidy, 521 A.2d 59, 61 (Pa. Cmwlth. 1987); see Ostermeyer v. Dep't of Transp., Bureau of Driver Licensing, 703 A.2d 1075 (Pa. Cmwlth. 1997) (reversing trial court for finding refusal was not knowing when licensee submitted no medical evidence of incapacity). A licensee must prove his incapacity for making a knowing and conscious refusal through "unequivocal medical evidence." DiGiovanni v. Dep't of Transp., Bureau of Driver Licensing,

717 A.2d 1125, 1126 (Pa. Cmwlth. 1998) (emphasis added) (holding medical testimony was equivocal[5] and did not rule out intoxication as cause for confusion).

Part of a licensee's burden is to prove his alcohol ingestion played *no part* in rendering him incapable of making a knowing and conscious refusal. Dailey. "If a motorist's inability to make a knowing and conscious refusal of testing is caused, in whole or *in part* by the consumption of alcohol, the motorist's affirmative defense fails." DiGiovanni, 717 A.2d at 1127 (italics in original) (quoting Gombar v. Dep't of Transp., Bureau of Driver Licensing, 678 A.2d 843, 847 (Pa. Cmwlth. 1996)). Thus, medical evidence is necessary to establish alcohol was not a contributing factor to a licensee's confusion. Kollar v. Dep't of Transp., Bureau of Driver Licensing, 7 A.3d 336 (Pa. Cmwlth. 2010) (reversing trial court because licensee did not meet burden of proving that refusal was not knowing or conscious); see Twoey v. Dep't of Transp., Bureau of Driver Licensing (Pa. Cmwlth., No. 1089 C.D. 2010, filed February 10, 2011), 2011 WL 10844848 (unreported).

In Ostermeyer, we recognized the necessity for medical evidence of incapacity when a licensee does not have an obvious injury or incapacity. There, the trial court excused a licensee from presenting expert testimony of his incapacity to make a knowing and conscious refusal to submit to a chemical test because he suffered a head injury. We reasoned that the driver's testimony that he "was fading in and out from hitting his head on the windshield" was not sufficient to show

---

[5] "Equivocal statements that a motorist's condition 'could' have or 'may' have prevented him from [making a knowing and conscious decision to refuse chemical testing] are insufficient to meet that requirement." Grad v. Dep't. of Transp., Bureau of Driver Licensing (Pa. Cmwlth., No. 199 C.D. 2008, filed September 18, 2008), 2008 WL 9396719, at *3 (unreported).

incapacity.  Id. at 1078.  In addition to the licensee's testimony, the officers on the scene corroborated the damage to the car windshield.  Nevertheless, we concluded the licensee's head injuries were not so obvious that the licensee was excused from providing expert testimony.  Consequently, we held the trial court erred in not requiring expert testimony, and we reinstated the Department's suspension.  Id.

In this case, Licensee did not claim an injury or any medical incapacity.  Despite asserting an incapacity defense, Licensee presented no medical evidence as to his incapacity, or to rule out alcohol as a contributing factor to his inability to understand the Implied Consent Law.  The only evidence as to Licensee's inability to provide a knowing and conscious refusal was his testimony and the Video.

Although the trial court credited Licensee's testimony regarding his confusion, the trial court did not discern whether the confusion was attributable to the circumstances or to his intoxication.  The trial court also relied on its own observations of Licensee's confusion on the Video.  The trial court's observations do not constitute competent, unequivocal medical evidence that may sustain Licensee's burden.  Further, there is no record evidence, medical or otherwise, that establishes Licensee's confusion was unrelated to his intoxication.

Therefore, we agree with the Department that the trial court erred in not requiring Licensee to produce medical evidence to support his alleged inability to make a conscious and knowing decision on whether to submit to the blood test.  Ostermeyer.  Absent medical evidence of his incapacity, Licensee's defense fails.

9

## 2. Sufficient Evidence

A trial court's finding that a licensee was unable to make a knowing and conscious refusal must be affirmed so long as sufficient evidence exists in the record to support the finding. Kollar. Thus, we next consider whether the record supports the trial court's conclusion that the circumstances here rendered Licensee's refusal unknowing.

Essentially, the trial court found that Licensee's refusal was not knowing and conscious because he was confused. Although we are bound by the trial court's findings that Licensee was confused, and his refusal unknowing as a consequence, we may reverse the trial court if there is insufficient evidence to support those findings. Ostermeyer; Twoey.

Precedent is clear that where a licensee received implied consent warnings, his "subjective confusion" concerning his rights cannot negate his knowing and conscious refusal of chemical testing, and is not a valid defense to a license suspension. Scott, 684 A.2d at 546; McKenna, 72 A.3d at 298-301; Sitoski, 11 A.3d at 20; Yourick v. Dep't of Transp., Bureau of Driver Licensing, 965 A.2d 341, 345 (Pa. Cmwlth. 2008). Therefore, we examine the trial court's conclusion that Licensee's subjective confusion rendered his refusal unknowing.

The trial court cited Department of Transportation, Bureau of Driver Licensing v. Lipko, 654 A.2d 227 (Pa. Cmwlth. 1995), to support its conclusion that the circumstances here precluded Licensee's ability to provide a knowing refusal. However, the circumstances here are dissimilar to those in Lipko.

10

In <u>Lipko</u>, the licensee's confusion pertained to his commission of different violations. The officer arrested the licensee for DUI and for possession of marijuana and drug paraphernalia. The licensee did not understand how he was entitled to an attorney for the possession charges, but not for the refusal of chemical testing. The two-page implied consent warnings at the time included a reference to <u>Miranda</u> warnings. The trial court found the implied consent warning was confusing and required clarification. Moreover, it concluded an officer was required to ensure the licensee understood the context of the chemical test and the consequences of refusal. Ultimately, the trial court determined a finding of a knowing and conscious refusal was impossible when the licensee was, at the same time, being interrogated on the possession charge. The "simultaneous custodial interrogation and request for chemical analysis" led to the licensee's confusion. <u>Lipko</u>, 654 A.2d at 229.

By contrast, in this case, the trial court alluded to no evidence of circumstances that made the Warning confusing. Significantly, Licensee was not being interrogated regarding criminal charges unrelated to his driving when he received the Warning. Thus, the primary factor responsible for Lipko's confusion, the simultaneous arrest for two different offenses, is not present here.

As discussed in detail above, the evidence is not legally sufficient to serve as a basis for the trial court's finding that Licensee's confusion rendered his refusal unknowing. <u>DiGiovanni</u>. Licensee did not suffer from an obvious injury or a medical condition that precluded him from submitting to a blood test. He also did not submit medical evidence to show his confusion was not attributable to

11

intoxication. Ostermeyer. That he appeared confused on the Video is not competent evidence of confusion. Id.

The source of Licensee's confusion is material. Appeal of Attleberger, 583 A.2d 24 (Pa. Cmwlth. 1990) (en banc). "[I]f a licensee's self-inflicted condition due to his voluntary consumption of alcohol is a factor which contributes to rendering him mentally incapable of making a knowing and conscious refusal to submit to chemical testing, the defense must fail." Dep't of Transp., Bureau of Driver Licensing v. Holsten, 615 A.2d 113, 116 (Pa. Cmwlth. 1992). Here, the trial court did not rule out intoxication as a cause for Licensee's confusion.

The only circumstance the trial court identified as contributing to Licensee's confusion was the alleged rapid pace at which Officer read the Warning. The trial court did not find Officer's recitation of the Warning was incomprehensible. Nor did it find that Officer misled Licensee about the Warning. Also, there is no evidence as to distractions in the DUI booking center while Officer read the Warning.

The trial court found Licensee's confusion was genuine because he provided a preliminary breath test (PBT). However, this Court "rejected [a] [l]icensee's argument that a licensee's subjective confusion based on the completion of a PBT supports the conclusion that [his] refusal was not knowing or conscious." Sitoski, 11 A.3d at 20 (citation omitted).

The trial court also found Licensee's repeated requests to speak to an attorney "indicate[d] … confusion and an effort to understand the warnings, rather than seeking to delay submitting to a blood test." Tr. Ct., Slip Op., at 6. The Warning

12

adequately advised Licensee that he was not entitled to speak to an attorney. McKenna. In the implied consent context, repeated requests to speak to an attorney qualify as a refusal by conduct, not as confusion. Hirsch.

In addition, the trial court found it significant that upon realizing his license would be suspended for a year, Licensee attempted to agree to a blood test. This "indicat[ed] he had no understanding of the implied consent warnings." Tr. Ct., Slip Op., at 6. However, this Court "[holds] that the licensee's initial failure to unconditionally agree to testing was a refusal and was not vitiated by his later assent." McKenna, 72 A.3d at 300. Thus, Licensee's later attempt to consent is of no moment. Id. Moreover, an officer is not required to "spend time waiting to see if the licensee will ultimately change his mind." Id. (citation omitted).

In sum, although the trial court noted several reasons for finding Licensee confused, Licensee's observable condition is not competent evidence that his confusion was unrelated to his intoxication. Stated differently, the trial court's reasons for believing Licensee was confused do not constitute evidence that the circumstances here precluded Licensee from making a knowing refusal.

From our review of the record, there is no evidence of objective causes for Licensee's confusion.[6] Because there is insufficient evidence to prove

---

[6] Although Licensee testified he needed reading glasses to read the Warning, there is no indication that he advised Officer of his need for glasses. Regardless, an officer is not required to heed a licensee's request for reading glasses so that he may read the Form DL-26 himself. Boerner v. Dep't of Transp., Bureau of Driver Licensing (Pa. Cmwlth., No. 2529 C.D. 2015, filed September 15, 2016), 2016 WL 4898561 (unreported).

13

circumstances other than his intoxication precluded Licensee from providing a knowing and conscious refusal, we reverse.

## III. Conclusion

For the foregoing reasons, we reverse the order of the trial court. Accordingly, the Department's suspension is reinstated.

_____
ROBERT SIMPSON, Judge

14

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Christopher C. Bartolucci | : | |
| | : | |
| v. | : | No. 74 C.D. 2017 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

## **O R D E R**

**AND NOW**, this 21st day of December, 2017, the order of the Cumberland County Court of Common Pleas is **REVERSED**, and the one-year suspension on Christopher C. Bartolucci's operating privilege is **REINSTATED**.

ROBERT SIMPSON, Judge